(No. 23827.—

JOHN E. GROVES *et al.* Appellants, *vs.* THE BOARD OF EDU-
CATION OF THE CITY OF CHICAGO, Appellee.

*Opinion filed June 11, 1937—Rehearing Petition stricken
October 6, 1937.*

JOHN E. GROVES, for appellants.

RICHARD S. FOLSOM, (FRANK S. RIGHEIMER, RALPH
W. CONDEE, and FRANK R. SCHNEBERGER, of counsel,)
for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

The validity of legislation reducing the compulsory
retirement age of school teachers and repealing, or chang-
ing, other provisions relating to annuities and the volun-
tary retirement of teachers, is challenged by this appeal.
The case comes here from the circuit court of Cook county
where an order was entered dismissing counts 1, 2 and 5
of the second amended bill of complaint, for want of equity.

Appellants are retired school teachers between 65 and 70
years of age who were retired by the Chicago board of

education on July 24, 1935, pursuant to the provisions of the law commonly referred to as the Miller act, as revised and in force July 12, 1935. They allege that prior to their involuntary retirement they had taught in the public schools of Chicago for many years; that prior to April 20, 1917, pursuant to the statute then in force, teachers, at the beginning of each school year, were required to be elected, annually, for the next ensuing year; that their employment, prior to April 20, 1917, was contractual, and that such contractual relation continued after the 1917 amendment of such statute became effective; that the effect of the 1917 amendment was to make such contracts perpetual; that in and by such contracts of employment, they acquired vested rights that could not be impaired by subsequent acts of the General Assembly (such as the Miller act) or by resolutions of the board of education adopted pursuant to legislative authority or direction.

The facts disclose that there had been for many years a "teachers' pension and retirement fund," maintained principally from taxes levied for that purpose, to which all teachers in the Chicago public schools were required to contribute and from which they received a pension or annuity for life, upon retirement. Prior to 1935, this pension statute provided for pensions, upon retirement, of from $800 to $1000 per annum. This section of the School Law was amended at the 1935 session of the General Assembly, at the same session that the Miller act was amended, increasing the annuity to be paid on retirement, to $1200. Each of appellants is now receiving this amount from this fund.

At the 1925 session of the General Assembly, the Miller act was passed, providing for another and additional pension of $1500 per annum, to be paid entirely out of tax funds, to Chicago school teachers upon their retirement at 70 years of age and over. The Miller act, as originally passed, made no provision whatsoever for the retire-

ment of teachers between the ages of 65 and 70. At the 1927 session of the General Assembly the act was amended by adding section 3 thereto. This section provided for the voluntary retirement of teachers between 65 and 70 years of age, and required the board of education to retire such teachers, upon their request, and to pay teachers retiring at 65 years of age $1000 a year; at 66 years of age $1100 a year; at 67 years of age $1200 a year; at 68 years of age $1300; at 69 years of age $1400, and at 70 years of age $1500 a year. The act provided for their compulsory retirement at the age of 70. The act made no provision whatever for the levy of an additional tax for funds out of which Miller act annuities were to be paid. The board, therefore, was required to pay them out of the existing taxes levied for educational purposes, and the money set aside for current salaries of active teachers was decreased by the amount of such annuities. These annuities or pensions were required to be, and were, paid in addition to the pensions paid out of the teachers' pension and annuity fund. This amendment to the Miller act was approved June 24, 1927. Laws of 1927, p. 792.

At the regular session of the Fifty-ninth General Assembly held in 1935, three companion bills were passed that are involved in the case at bar, two of which appellants contend are unconstitutional and void. The validity of the third bill—which increased the annuity to be paid to teachers from the public school teachers' pension and annuity fund and increased the taxes to be levied for that fund—is not questioned. One of the acts adopted by the Fifty-ninth General Assembly which appellants charge is unconstitutional and void is entitled: "An act to amend sections 1 and 2 and the title of 'An act to provide for the compulsory and voluntary retirement of teachers, principals, district superintendents, and assistant superintendents, and for the voluntary retirement of superintendents of schools and members of the board of examiners, and

for the payment of retirement annuities,' approved May 19, 1926, as subsequently amended, and to repeal section 3 of said act." (Laws of 1935, p. 1378.) By this amendment the compulsory retirement age of teachers was reduced from 70 to 65 years, and the annuity to be paid pursuant to this act was reduced to $500. Section 3, the section that required the board of education to retire all teachers on their voluntary application at 65 or more years of age and pay them annuities ranging from $1000 to $1500 per annum, was expressly repealed.

The other act which appellants seek to have declared unconstitutional is: "An act to amend section 138 of 'An act to establish and maintain a system of free schools,' approved and in force June 12, 1909, as amended." (Laws of 1935, p. 1337.) This act amended section 138 of the School Law by adding the words "subject to termination by compulsory retirement at the age of 65 years" after the words "appointments to teachers and principals shall become permanent." This act became effective July 12, 1935, during the summer vacation when the public schools were closed. The board thereupon retired the two appellants and all other teachers coming within the purview of the amendments. Each of appellants is now receiving $1700 per annum from these two pensions above referred to. Appellants contend that prior to the adoption of the "Otis law" amendments (April 20, 1917) they had yearly contracts of employment; that upon the adoption of these amendments such contracts became perpetual; that in addition to this perpetual contract there is a yearly contract; that the adoption by the board of education of the "annual school budget," in which appropriations are made for teachers' salaries pursuant to a salary schedule, and by the acceptance of such salaries by appellants and other teachers, a yearly contract of employment was entered into. They contend that they acquired vested rights pursuant to these contracts and that the acts of the Fifty-ninth General As-

sembly, and of the board of education, violated the obligation of these contracts and deprived them of property without due process of law. They also allege that political and undue influence was used upon the General Assembly which induced it to adopt the amendments complained of, and that the amendments were passed by the members of both houses under duress; and, finally, that the amendments in question were passed by an illegally constituted General Assembly.

In *Dodge* v. *Board of Education,* 364 Ill. 547, we had occasion to consider the same contentions now raised by appellants concerning the Miller act. We there held the amendment of July 12, 1935, was not invalid, since it did not take away any vested rights to future installments for pensions to teachers who had retired, or applied for retirement, under the law in force prior to the amendment. It was there pointed out that future installments of pensions and annuities, payable solely out of funds raised by taxation, where teachers contribute nothing toward the fund, are not vested property rights, but are mere expectancies based upon the anticipated continuance of existing law and not based on contract. Our decision in the *Dodge case* is buttressed by many previous decisions of this court therein referred to, from which it will be seen that the State may reduce or abolish future installments of pensions payable solely out of State or municipal funds, without violating any provisions of the State or Federal constitutions.

The claim of appellants that their tenure of office became a fixed and vested right which neither the State nor the board of education could later deprive them of, by reason of the act of April 20, 1917, commonly known as the Otis law, is likewise untenable. Their contention on this point is almost identical with the position of appellants in the recent case of *Phelps* v. *Board of Education of the Town of West New York* (N. J.) decided on appeal March 1, 1937 (Nos. 454, 455, October Term, 1936) by the

United States Supreme Court. There the appellants likewise claimed that by virtue of an act of the legislature of New Jersey adopted in 1909, three years of service under contract conferred upon a school teacher "a contractual status indefinite in duration which the legislature is powerless to alter or to authorize the board of education to alter." The Supreme Court of New Jersey, whose judgment on this point was expressly quoted and affirmed by the Supreme Court of the United States, held that the act of 1909 "established a legislative status for teachers, but we fail to see that it established a contractual one that the legislature may not modify. * * * The status of tenure teachers, while in one sense perhaps contractual, is in essence dependent on a statute, like that of the incumbent of a statutory office, which the legislature at will may abolish, or whose emoluments it may change." This decision is conclusive on the point raised.

The act amending section 138 of the School Law, and the Miller act of 1935, pertaining to the compulsory retirement of school teachers, are valid, even though the State has not been reapportioned into senatorial districts since 1901. (*Fergus* v. *Kinney,* 333 Ill. 437; *People* v. *Thompson,* 155 id. 451.) The length of term and mode of appointment of teachers are under the control and within the power of the legislature. Section 1 of article 8 of our constitution charges the General Assembly with the duty of establishing and maintaining a system of free schools whereby all children of this State may receive a good common school education. The broad power and discretion of the legislature in regulating school affairs has frequently been recognized by this court. (*Keime* v. *Community High School Dist.* 348 Ill. 228; *People* v. *Kipley,* 171 id. 44.) A legislative enactment for retirement of school teachers or other public employees at the age of 65, is not, in itself, an arbitrary or unusual provision. Whether such a law is wise or unwise is a matter with which this court has

nothing to do. (*People* v. *Russel,* 294 Ill. 283; *Catholic Bishop* v. *Village of Palos Park,* 286 id. 400.) Where an office is created by statute it is wholly within the power of the legislature creating it, and the length of term and mode of appointment may be altered at pleasure or the office may be abolished altogether. *People* v. *McCormick,* 261 Ill. 413; *People* v. *Olson,* 245 id. 288; *People* v. *Loeffler,* 175 id. 585.

The decree is affirmed. *Decree affirmed.*