5 So.2d 723

**CITY OF BIRMINGHAM et al. v. PENUEL.**

**6 Div. 912.**

Supreme Court of Alabama.

Jan. 15, 1942.

John S. Foster, of Birmingham, for appellant.

Mullins & Deramus, of Birmingham, for appellees.

THOMAS, Justice.

The appellee in this case filed a petition for a declaratory judgment against the City of Birmingham, et al., appellants, to secure a declaration as to his rights with respect to the policemen's pension fund. Appellee alleged that he became employed as a policeman by and for said city on May 12, 1926, and continued in such employment until Jan. 28, 1936, when he was retired on a pension of $85 per month on account of permanent and total disability suffered in line of duty as a member of such police department. He received a monthly pension of $85 from the date of his retirement until October 5, 1939, when the appellants, pursuant to an act of the legislature approved Sept. 19, 1939, Code 1940, Tit. 62, § 733 et seq., began to deduct the sum of $5.10 each month from said monthly pension.

Appellants contend that they have the right under said legislative act to deduct said sum of $5.10 from the monthly pension; that the appellee denies that appellants have such right; that said act of the legislature is violative of the constitutional provisions of the Federal and State Constitutions prohibiting the enactment by the legislature of any law impairing the obligation of contracts. Appellants admitted the allegations of fact as contained in the petition of appellee, but denied that the act of the legislature in question was unconstitutional for either or any of the reasons urged.

The judgment of the court follows: "This cause coming on to be heard was duly and regularly submitted for the judgment of the Court; and said submission being duly considered, it is ordered, adjudged and declared that the respondents cannot legally deduct from petitioner's pension of $85.00 per month an amount equal to six percentum per month, of such pension under an Act of the Legislature approved September 19, 1939, appearing on pages 926–929 of the bound volume of the General Acts of 1939, or under Title 62, Section 735 of the Alabama Code of 1940, for the reason that the application of either of said statutes to reduce the amount of the pension payable to a person who was a pensioner previous to September 19, 1939, would constitute a violation of that part of Section 22 of the Constitution of Alabama forbidding the passage of a law impairing the obligation of a contract. (Roddy v. Valentine, 268 N.Y. 228, 197 N. E. 260; Trotzier v. McElroy [182 Ga. 719], 186 S.E. 817.)"

The City of Birmingham rests its arguments on two propositions namely: Pension legislation which merely declares a state policy, and directs a subordinate body to carry it into effect is subject to revision or repeal at the discretion of the legislature. Dodge v. Board of Education, 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57. The Legislature may decrease the compensation fixed by law for such officers without violating the obligation of any contract. Benford v. Gibson, 15 Ala. 521; Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231; Green v. West, 62 Ga.App. 584, 9 S. E.2d 102.

The city further contends that where a law requires compulsory contributions to be made to a pension fund, the pensioners acquire no vested right to the pension.

Groves v. Board of Education of Chicago, 367 Ill. 91, 10 N.E.2d 403; Phelps v. State Board of Education, 115 N.J.L. 310, 180 A. 220; City of Dallas v. Trammell, 129 Tex. 150, 101 S.W.2d 1009, 112 A.L.R. 997; Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426; State v. Board of Trustees of Policemen's Pension Fund, 121 Wis. 44, 98 N.W. 954; 12 Corpus Juris 1020; 16 C.J.S., Constitutional Law, § 318; Roddy v. Valentine, 268 N.Y. 228, 197 N.E. 260; Ball v. Board of Trustees of Retirement Fund, 71 N.J.L. 64, 58 A. 111; Bader v. Crone, 116 N.J.L. 329, 184 A. 346; Turner v. Passaic Pension Committee, 112 N.J.L. 476, 163 A. 282, 10 N.J. Misc. 1270; Jones v. Valentine, 164 Misc. 443, 298 N.Y.S. 802; Annotations and Decisions cited in 54 A.L.R. 943 and 98 A.L.R. 505, 112 A.L.R. 1009; General Acts of Alabama of 1923, p. 663 et seq., General Acts of Alabama of 1939, p. 926 et seq., Code 1940, Tit. 62, § 733 et seq. ·

The several acts to be considered are: General Acts of Alabama of 1923, p. 663 et seq., and General Acts of 1939, p. 926 et seq. The trial court held that the act of 1939, supra, was a violation of the contractual clause of the Constitution of Alabama. Skinner's Const.Anno. p. 143 et seq., Const.1901, § 22, and U.S.Constitution, art. 1, § X, cl. 1.

We have indicated that the appellee, upon being disabled, was retired on January 28, 1936, under Section 9 of the Act of the Legislature of Alabama approved Sept. 29, 1923. Acts of 1923, p. 663, Code 1940, Tit. 62, § 741. So far as here pertinent the said act provides as follows:

"Section 9. That if any member of such police department, while in the performance of his duty, become and be found to be temporarily totally disabled, mentally or physically, for service in such police department, by reason of service therein, the authority referred to in Section 7 hereof shall order the payment, and there shall be paid, from the proper respective fund herein provided for to any such disabled member whose regular or usual salary or pay in such department is less than $150.00 per month the sum of $85.00/100 monthly, or at the rate of $85.00/100 per month, during such total disability; * * * and such disabilities shall be arrived at by such authority after report from the City Physician and such other physicians and surgeons as such authority may examine, and after the consideration of any other

evidence such authority may desire to consider; this, provided such member during the same period is paid no salary as a member of the police department."

The appellants since October 5, 1939, have been deducting monthly six per centum of the $85 (which six per centum amounts to $5.10). Appellee has drawn as disability benefits from the date of his retirement down to October 5, 1939, and has been paying the amount deducted from said pension into the policemen's relief funds. The appellants contend that said deduction is authorized and required by Section 1 of the Act of the Legislature of Alabama, approved September 19, 1939, p. 926 et seq., Code 1940, Tit. 62, § 735, which amends § 3 of the Act of 1923, supra. The amendment, in so far as here pertinent, provided that there should be deducted monthly from the pension payable to any disabled or retired member six per centum of the amount of such pension and that said six per centum should be paid into the policemen's relief fund.

The City's attorneys say that the sole question presented to this court is whether or not the 1923 act created contractual rights between the appellee and appellant which a subsequent legislature was powerless to change to the detriment of the appellee.

In Dale v. Governor, 3 Stew. 387, the Supreme Court of Alabama held that an act settling an annuity upon Dale for past services was subject to repeal. It was held: "The act of 15th December, 1821, conferring a military title, and settling an annuity for life upon Samuel Dale, for services rendered, and losses sustained in the Creek war, as set forth in the preamble thereto, was an act of ordinary legislation, and created no obligation, or contract on the part of the State, nor vested any interest in the annuity, until paid."

Appellants' counsel say that Cobbs v. Home Insurance Company, 18 Ala.App. 206, 91 So. 627, 629, is not decisive of the instant case in that the "compensation thus paid [that is, the pension], by whatever name called, is not a gratuity, but a part of the stipulated consideration, for which they contracted and served." The court was not speaking on the question of whether or not the compensation was subject to change, but merely said, in effect, that the provisions for a pension did not amount to the giving away of public money in violation of the constitution.

The courts have recognized that a pension in some sense is "contractual". Is this the case under our Constitution and statutes? There are well-considered authorities in other jurisdictions touching the subject, viz, the case of Groves v. Board of Education of Chicago, 367 Ill. 91, 10 N. E.2d 403, wherein the Supreme Court of Illinois recognizes a distinction to be considered. And in the case of Phelps v. State Board of Education, 115 N.J.L. 310, 180 A. 220, 222, the court observed: "The status of tenure teachers, while in one sense perhaps contractual, is in essence dependent on a statute, like that of the incumbent of a statutory office, which the Legislature at will may abolish, or whose emoluments it may change."

The Supreme Court of Texas in City of Dallas v. Trammell, 129 Tex. 150, 101 S. W.2d 1009, 1013, 112 A.L.R. 997 said: "While the Illinois courts speak of a pension accruing under the laws of that state to policemen and other employees as in the nature of a bounty or gratuity, we are unable to see any distinction to be made in the application of the rule, even if the pension be regarded as arising from contract as an essential part of the agreed compensation of the employee. Mr. Dillon, in his Municipal Corporations, immediately following the quotation above set out [the quotation above set out recognized the contractual characteristics of a pension] said: 'But the existence of a vested right is dependent upon statutory provisions conferring the pension without qualification *and without any reserved right to terminate it.*' (Italics by the author.) In our opinion, the contract entered into by the employee with the city is made subject to the reserved power of the Legislature to amend, modify, or repeal the law upon which the pension system is erected, and this necessarily constitutes a qualification upon the anticipated pension and a reserved right to terminate or diminish it."

It is necessary that we consider in some detail the provisions of the 1923 act, Acts of 1923, p. 663 et seq. (1) The act of 1923 merely declares a state policy as to such pension known as the "policemen's relief fund" when derived and raised in the manner provided, and directs the city to carry it into effect. (2) The act provides (p. 665, § 2) that "said funds shall be set apart by the comptrollers or other persons performing the duties of treasurers, of said cities, into a separate fund which shall be held and maintained by the city as is hereinafter provided." (3) It provides for the compulsory deduction of one per centum of the salaries of policemen, and for the compulsory payment of the amounts so deducted "into the policemen's" relief fund. The policemen never receive this one per centum of their salaries. The members of the police department had no such power of disposition over such deductions as always accompanies ownership of property. Contributions were increased to six per centum of the salary of each member of the police force by the 1939 Act (Acts 1939, p. 927), said last named act amending §§ 3 and 4 of the Act of 1923, supra.

Section 10 of the Act of 1923, p. 667, Code 1940, Tit. 62, § 742, provides that "any such member may be called back and examined at any time under the orders of such authority and may be ordered back to active service, or to other service in connection with the city as he is able to perform, according to the instructions, findings and orders of such authority referred to."

Sections 12 and 18, Code 1940, Tit. 62, §§ 744, 750, provide that members retired on account of length of service shall be "members to be and constitute a reserve force or a part or portion of the reserve force, and together with any others assigned thereto under the provisions of this subdivision shall be known as the reserve force of the police department of their cities, respectively; and they shall be on call at all times, and they shall perform special police duties in their respective cities as may from time to time be assigned to them by their chief of police, * * *" and "shall be paid * * * the sum of one hundred dollars per month during the time * * * of such reserve force."

Section 18 of the act provides that members retired on account of disability or length of service "shall receive such benefits only so long as such members receiving same shall be bona fide residents of the county" in which the city is located, which creates said fund from which said members respectively, received such benefits.

What then, under our Constitution and decisions is the effect of the fact that the appellee and the appellants had no option or election with respect to the pension relationship? On this subject it is interesting to note that under the appropriate provision of the Federal Constitution (Sec-

172

tion 10, art. 1, of the Constitution of the U. S. and our § 22, Art. 1 being similar in constitutional verbiage) the instant question was discussed in Dodge v. Board of Education, 1937, 302 U.S. 74, 58 S.Ct. 98, 100, 82 L.Ed. 57, 61. It is therein stated as follows:

"The Supreme Court of the State [364 Ill. 547, 5 N.E.2d 84], affirmed, holding that, notwithstanding the payments under the Miller Law [Smith-Hurd Stats. c. 122, § 614a et seq.], are denominated annuities, they cannot be differentiated from similar payments directed by law to be made to other retired civil servants of the state and her municipalities, and are in fact pensions or gratuities involving no agreement of the parties and subject to modification or abolition at the pleasure of the Legislature.

"The parties agree that a state may enter into contracts with citizens, the obligation of which the Legislature cannot impair by subsequent enactment. They agree that legislation which merely declares a state policy, and directs a subordinate body to carry it into effect, is subject to revision or repeal in the discretion of the Legislature. The point of controversy is as to the category into which the Miller Law falls.

"In determining whether a law tenders a contract to a citizen, it is of first importance to examine the language of the statute. If it provides for the execution of a written contract on behalf of the state, the case for an obligation binding upon the state is clear. Equally clear is the case where a statute confirms a settlement of disputed rights and defines its terms. On the other hand, an act merely fixing salaries of officers creates no contract in their favor, and the compensation named may be altered at the will of the Legislature. This is true also of an act fixing the term or tenure of a public officer or an employe of a state agency. The presumption is that such a law is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise. He who asserts the creation of a contract with the state in such a case has the burden of overcoming the presumption. If, upon a construction of the statute, it is found that the payments are gratuities, involving no agreement of the parties, the grant of them creates no vested right."

In the Dodge case, supra, the several acts of the Illinois Legislature as to several classes of retirement as to teachers was considered and it was held that an amendment of the Illinois Pension Law reducing the pension of teachers who had retired did not impair the obligation of a contract.

In the case of Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 151, 33 L.Ed. 426, it was held that a pension statute providing for compulsory contributions by policemen to a pension fund created no contract. The Court said:

"If the $2 a month retained out of the alleged compensation of the police officer had been in fact paid to him, and thus become subject to his absolute control, and after such payment he had been induced to contribute it each month to a fund on condition that, upon his death $1,000 should be paid out of it to his representative, a different question would have been raised with respect to the disposition of the fund, or at least of the amount of the decedent's contribution to it. * * * It is sufficient that the $2 retained from the police officer each month, though called in the law a part of his compensation, were, in fact, an appropriation of that amount by the state each month to the creation of a fund for the benefit of the police officers named in that law, and, until used for the purposes designed, could be transferred to other parties, and applied to different purposes, by the legislature."

The Supreme Court of Wisconsin in State v. Board of Trustees of Policemen's Pension Fund, 121 Wis. 44, 98 N.W. 954, 956, said of deductions from the officers' salaries that it was "not first segregated from the public funds so as to become private property and then turned over to the control of the pension board, but is set aside from one public fund and turned over to another, regardless of the mere words of the law. The effect thereof is to scale down the salaries of the officers in form by so much as measures the contribution by each to the pension fund, but to really fix such salaries at the amount actually paid and to require the payment by the city into the pension fund of the amounts, per month, mentioned as being taken from the salaries. Such amounts are no less public money after such payment than before. * * *"

In an annotation in 54 A.L.R. 943 et seq., p. 945, is the following: "In some instanc-

es pension funds are maintained in part by compulsory contributions of the beneficiaries thereof. This is generally true where the beneficiaries are policemen or firemen; and in such a case the statute creating the fund ordinarily authorizes the proper official to retain weekly or monthly a certain per cent of the prospective pensioner's pay. By the great weight of authority the fact that a pensioner has made such compulsory contributions does not give him a vested right in the pension."

This is true as the pension is terminable at the will of the grantor. The rule is recognized in California, Illinois, Iowa, Kentucky, Minnesota, Missouri, New York, Ohio, Texas, Wisconsin and England, and by analogy is the rule in this jurisdiction established in Dale v. Governor, supra, since 1831, to this time.

In Helms v. Alabama Pension Commission, 231 Ala. 183, 184, 185, 163 So. 807, 808, Mr. Justice Foster said: "It is not necessary to support such a law that the claimant be given notice and a hearing by the commission, since technically a pension is a bounty, or gratuity, usually for some public service, and the Legislature may pursue its own course in fixing the machinery for determining those to whom it is granted, and due process does not exist. 48 Corpus Juris, 786, § 3, p. 791, § 27; Corkum v. Clark, 263 Mass. 378, 161 N.E. 912. It is the privilege of the Legislature to withdraw its allowance at any time; certainly before it is due. Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426; Dale v. Governor, 3 Stew. 387; People ex rel. v. Retirement Board, 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 943 notes."

Subsequent annotations appearing in 98 A.L.R. 505, and 112 A.L.R. 1009, show that this rule has been generally followed in other jurisdictions. The rule enunciated in these annotations is also recognized in 12 C.J. 1020 and 16 C.J.S., Constitutional Law, § 318.

The case of Roddy v. Valentine, 268 N. Y. 228, 197 N.E. 260, cited by the trial court in support of the judgment rendered did not recognize the distinction between voluntary and involuntary contributions by the official in question. In the last cited case the New York court cited the case of Ball v. Board of Trustees of Retirement Fund, 71 N.J.L. 64, 58 A. 111. It is apparent from the opinion in the Ball case, supra, that the basis of the holding that contractual rights were created was where

contributions were voluntary and the contract arose out of the pensioner's acceptance of the offer of a pension by voluntarily paying the contributions for the required time. Subsequent decisions of the New Jersey court, which rendered the decision in the Ball case, supra, hold that where the contributions were not voluntary no contractual rights existed with respect to the pension. Bader v. Crone, 116 N.J.L. 329, 184 A. 346; Turner v. Passaic Pension Committee, 112 N.J.L. 476, 163 A. 282, 10 N.J.Misc. 1270.

The Supreme Court of New York, subsequent to the decision in Roddy v. Valentine, supra, recognized as the determining factor, as to whether or not a pension law creates contractual rights, whether or not the contributions are compulsory. In Jones v. Valentine, 164 Misc. 443, 298 N.Y.S. 802, 804, the New York court said:

"Plaintiff argues that portions of his salary went into the pension fund and to that extent furnished consideration for a contractual relationship which defendant has sought illegally to impair. But the answer to this, to my mind, is to be found in the reasoning set forth, under a somewhat analogous situation, in Pennie v. Reis, 132 U.S. 464, at pages 470 and 471, 10 S. Ct. 149, 33 L.Ed. 426. The deductions of 2 per cent. from plaintiff's salary which, with funds derived from certain fines, licenses, and various other sources, went into the police pension fund, though called part of his compensation, *were never actually received or controlled by him, nor could he have prevented their appropriation to the fund in question.*" [Italics supplied.]

The amendatory act of 1939, Acts of Alabama of 1939, p. 927, provides, among other things, that: "The benefits paid under this subdivision shall be reduced each month by the amount which the beneficiary receiving same, received during the then last previous month as salary, wages or compensation from any town, city, county or the state of Alabama." Code 1940, Tit. 62, § 735.

In Benford v. Gibson, 15 Ala. 521, the Court said: "And if a state may abolish an office, without violating the constitution of the United States, or alter the tenure, by which, it is holden, or increase or diminish the duties of the officer, then it is manifest, that the appointment to office cannot be considered a contract; the obligations

of which are protected by the tenth section of the first clause of the constitution of the United States; and if not a contract, in the sense of the term, as used in that instrument, then the legislature of a state may increase, or diminish, the salaries, or perquisites of their officers, as it may seem fit, without any restraint, save that imposed by its own constitution."

 The provisions in the 1923 act requiring officers who are retired on a pension to perform duties in the police department bring that act within the purview of the rule enunciated by our court that the duties and compensation of such public officers may be changed without violating the constitutional provision prohibiting the enactment of any law impairing the obligation of contracts.

The city attorney well observed that the trial court also relied upon the case of Trotzier v. McElroy, 1936, 182 Ga. 719, 186 S.E. 817. In a later case, Green v. West, 62 Ga.App. 584, 9 S.E.2d 102, 103, decided in 1940, the Court of Appeals of Georgia, speaking of the "vested right" theory announced in the Trotzier case, said: "It is the general rule that amounts thus assessed against the salaries of such officers (involuntary contributions, we interpolate) and retained by and paid into a pension fund do not become the property of the officer, and he has no vested right therein until the happening of the event or contingency authorizing the payment of the money or a part thereof to him or his family as provided by the act." [Parenthesis supplied.]

The rule enunciated by this court in Dale v. Governor, supra; Benford v. Gibson, supra; Helms v. Alabama Pension Commission, supra, was recently affirmed in Downs v. City of Birmingham, 240 Ala. 177, 186, 198 So. 231, and the holdings are to the effect that the legislature may, without impairing the obligation of contract, reduce the compensation of an official who is capable of and willing to devote all of his energy and time to the performance of his statutory duties. That is to say that in view of the provisions of the statute which make the right to receive the pension or the benefits derived contingent upon services in the future, certainly the "vested right" theory can have no application to the pension law under consideration. Under our constitution and our government, the legislature has the right to change the compensation of public offi-

cers, except in some instances where it is expressly restrained. Downs v. City of Birmingham, supra. The right to reduce the compensation of public officers (not specifically protected by our Constitution) is inherent in the state government, and applies to police officers who, because of disability or length of service, are required to do less than they were formerly required to do, but who are nevertheless expressly regarded as members of the police department and required to discharge other duties for the city assigned to them.

The judgment of the circuit court not being in accord with the foregoing view, the said declaratory judgment is reversed, and one here rendered denying a vested right in the petitioner-appellee.

Reversed and rendered.

GARDNER, C. J., and BROWN and FOSTER, JJ., concur.