WRIGHT, Presiding Judge.
Defendants in an action for declaratory judgment appeal from judgment rendered below. Plaintiffs, policemen and firemen, active or retired,- of the City of Gadsden, petitioned for a declaration of whether pension benefits granted under Act No. 226, Regular Session of the Legislature, 1959 were vested and not subject to change or alteration by passage of Act No. 904, Regular Session, 1975.
Facts necessary for submission were stipulated. It was stipulated that the provisions of Act 226 constituted a compulsory or involuntary pension plan. The Circuit Court of Etowah County held that rights under the 1959 act were vested in all those who had already retired or had satisfied the conditions for retirement prior to the effective date of Act 904 and such rights were not affected by Act 904. The court held that those who had not satisfied the conditions for retirement under Act 226 prior to the effective date of Act 904 had no vested rights in the benefits of Act 226 and were subject to Act 904.'
*839 Though not necessary to a decision, it is jointly conceded that Act 226 was not actu-arially sound and the pension fund established thereunder was being depleted at a rapid pace in spite of increased contributions. Act 904 was an effort to shore up the pension fund and prevent it from going broke. Whether Act 904 would accomplish such purpose is in question. The alterations effected by Act 904 are not pertinent. We mention the fact that Act 226 was failing and change was necessary, merely as an example of what is occurring through most pension systems, public and private. They were often enacted as politically expedient without sufficient study or consideration of actuarial soundness. Because all pension plans for governmental employees were established to be primarily funded from public tax funds, though contributed to in most cases by participants in some degree, the burden on such tax funds has grown to an astonishing amount. It is recognized that unless some remedy is developed quickly the tax load will become unbearable or many plans will fail.[1] This court, though much concerned, believes a resolution of the problem is a legislative one and not a judicial one. The law relating to public pensions and the vesting of rights of the members of the various plans to the benefits now existing in this state furnishes no answer to the problem. There is indication that the Supreme Court of Alabama recognized the approaching difficulty as long ago as 1966. In the case of Smith v. City of Dothan, 279 Ala. 571, 188 So.2d 532 (1966), the court indicated that there existed a legal situation which “denies the Legislature the right to pass reasonable legislation to keep the pension systems of municipalities flexible and actuarially sound by either requiring increased contributions from employees or reasonable reductions in pensions not yet due and payable to employees not yet entitled to be retired either for disability or length of service. Such a situation could result in some pension funds ‘running dry’ with future pensioners left without any funds from which the pensions could be paid, although they had contributed such funds during their entire employment by the municipality involved.” The “situation” referred to obviously is an unsound plan that is either prohibitive in cost or that will “run dry,” but in which rights have vested so that it cannot be changed.
The issue presented is whether there has been a vesting of rights under Act 226 free of any effect of Act 904.
In approaching a decision, we must point to the three prominent cases written by the Supreme Court of Alabama on the question of “vested rights in a pension plan.” Those cases are City of Birmingham v. Penuel, 242 Ala. 167, 5 So.2d 723 (1942); Smith v. City of Dothan, supra, and Snow v. Abernathy, 331 So.2d 626 (Ala.1976). The first two cases contain extensive discussion of the contractual principle of “vesting” which prevails in this state. The last case also presents a discussion of that principle and decides at what point vesting occurs when the factual basis for vesting is present. We can see no point in repeating here what those cases, particularly the latter two, have said. They state the law of “vesting” presently prevailing in this state. That law is: If a pension or retirement plan enacted by the Legislature provides for voluntary participation by employees of a governmental unit as opposed to a non-elective compulsory participation, those who elect to participate acquire vested contractual rights to the benefits provided therein. Such rights are vested at the time of acceptance of the plan and may not be impaired by subsequent legislation. Snow v. Abernathy, supra.
Is the corollary to the vesting of rights in a plan providing for voluntary acceptance and contribution that there is no vesting of rights in a compulsory, nonvoluntary plan even though there is employee contribution?
*840 The voluntary versus compulsory acceptance of a pension plan is derived from the legal fiction of the offer and acceptance of a contract; that there has been a bargaining of rights; that the legislature has made or authorized the making of an offer to the employee for his acceptance or rejection. Upon acceptance there is a contract which is protected from impairment by Article 1, Sec. 22 of the Constitution of Alabama. Smith v. City of Dothan, supra; Note, Public Employee Pensions in Times of Fiscal Distress, 90 Harv.L.Rev. 992, 998 (1977).
We have difficulty accepting the premise that a contract is created and protected by the constitution from any future change or is not created and protected merely by the legislature stating that one may accept a pension plan or must accept such plan. In either case, there probably is required contribution by both employee and government. Does the employee in the first instance really have any more choice than in the latter? The choice is not between alternative plans but is whether he will have retirement benefits or not. It would seem that rights of the employee and obligations of the government should be as enforceable in one case as the other.
In any event, whether there are contractual rights, property rights or mere gratuitous rights, in view of the deficiencies of most pension plans which are evident, there must be found some means of amending the plans to protect their financial integrity and prevent clearly unreasonable burdens upon public funds. The necessity for such action has been shown by the failure of the actuarial soundness of the Social Security fund and the overwhelming growth of the cost of the military and civilian pension systems of the federal government. Cardwell, Future Deficits in Social Security Financing, 1 Pension & Profit-Sharing T.J. 339 (1975). There is no legal bar to corrective action by that government because the federal courts have established that all pensions are mere gratuities and no vested rights accrue even after retirement except as to benefit payments which have accrued. Dodge v. Board of Educ., 302 U.S. 74, 58 S.Ct. 98, 82 L.Ed. 57 (1937); Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426 (1889).
This soliloquy has led us to the proposition of whether those plaintiffs who had satisfied all conditions for retirement or had retired under Act 226 before the effective date of Act 904 acquired any vested rights under Act 226. We hold that they did not.
Our research has disclosed no previous decision on this precise point. There is dicta in the case of City of Birmingham v. Penuel, supra, which appears to support the proposition that even though one has made contributions to a compulsory pension plan he never derives any vested right in the pension. Such dicta followed discussion of the gratuitous aspects of pensions derived from compulsory participation and contributions. However, the decision in the case was ultimately decided not on the “vested right” theory but on the theory that the pension of Penuel was actually compensation for services presently being performed and he was not actually retired on pension. Under such circumstances, his compensation could be reduced under the power of the legislature to alter or diminish the compensation of its employees.
Though we have expressed our dissatisfaction with the “voluntary contribution-contractual” theory of vested rights, in order to be consistent we must hold that one subject to a compulsory pension system never secures a vested contractual right immune from legislative change, but that there is only an expectancy created by law subject to change or revocation by the enacting authority. Until a sum becomes due under the act there is no right to payment. Dodge v. Board of Educ., supra; Pennie v. Reis, supra; Rafferty v. United States, 210 F.2d 934 (3d Cir. 1954).
It is the judgment of the court that the plaintiffs had no vested contractual rights under Act 226, before or after retirement and said act was subject to amendment and change by a subsequent act of the legislature; that they became subject to Act 904 upon its effective date except insofar as payment of benefits then accrued and due *841 and payable under Act 226. Therefore, the judgment of the trial court is reversed and remanded for entry of judgment in accord with this judgment.
REVERSED AND REMANDED WITH DIRECTION.
BRADLEY and HOLMES, JJ., concurring specially.

. Public Funds Problems, The Advisor [Retirement Systems of Alabama newsletter], March 1978, p. 2, reprinted from Pensions & Investments; McAdory, Pension Hike Warning, The Advisor, Nov. 1977, p. 1, reprinted from Birmingham News; Peirce, Fused Time Bomb, The Advisor, Oct. 1977, reprinted from Birmingham Post-Herald. See Retirement Systems of Alabama Annual Report (1977).