WISE, Justice.
The City of Gadsden, the defendant below (“the City”), filed a permissive appeal pursuant to Rule 5, Ala. R.App. P., from a January 15, 2013, order of the Etowah Circuit Court denying the City’s motion for a summary judgment as to Roy Harbin’s breach-of-contract claim against the City. We reverse and remand.

Facts and Procedural History

Harbin started working as a police officer for the City in 1972. It is undisputed that he did not have a written employment contract with the City. In 1972, Harbin also started mandatory participation in the Policemen’s and Firemen’s Retirement Fund of the City of Gadsden (“the PFRF”), which was established by Act No. 226, Ala. Acts 1959. At that time, the PFRF provided, in part, that, after 20 or more years of service, a participant would receive
“[a] retirement benefit equal to 50 per-centum of the current salary being paid to persons holding the same rank as such retirement member held at the time of his retirement.”
In 1975, the PFRF was modified by Act No. 904, Ala. Acts 1975, and the above-quoted “sliding scale provision” was eliminated. The PFRF was again modified in 1980 by Act No. 80-442, Ala. Acts 1980. Finally, in 2002, all the funds in the PFRF were transferred to the Employees’ Retirement System of Alabama (“the ERS”), which then administered the retirement program for the City’s police officers. Harbin retired in 2012 and currently receives pension payments under the ERS.
On January 11, 2007, Harbin sued the City, alleging breach of contract and seeking equitable relief. Afterward, he amended his complaint five times. In the fifth amended complaint, which was filed in 2011, Harbin alleged the following regarding the contract he contends was breached:
“Roy Harbin, age 67, has an employment agreement or contract or a memorandum of understanding with the City of Gadsden as a police officer. Roy Harbin was hired in 1972 and has been a Gadsden police officer 39 years. When Roy Harbin was hired, the City agreed to provide police and firemen a 20 year retirement program provided by statute whereby police and firemen would receive 50% retirement benefits after 20 years of service with a sliding scale. The City also agreed to provide lifetime major medical coverage.”
Harbin also alleged that he paid into the PFRF for 20 years, from 1972 until 1992, and that, therefore, he “became fully eligible for 20 years of retirement benefits in 1992.”
The City answered the complaint and denied Harbin’s allegations. Specifically, it denied that it had ever had an employment contract, an employment agreement, or a memorandum of understanding with Harbin. The City also denied that there had ever been anything called a “City Retirement Plan.”
On November 7, 2012, Harbin filed a motion for a partial summary judgment as to the issues whether he had a contract *692 with the City and whether that contract included a pension. He asserted that, when he was hired in 1972, the City agreed to provide a 20-year retirement program that was provided for by statute by which, after 20 years of service, he would receive 50% retirement benefits calculated on a sliding scale and lifetime major-medical insurance coverage. Harbin also asserted that the “agreement or contract was confirmed and ratified by employee handbooks issued by the City of Gadsden.” In support of the motion, he submitted excerpts from the City’s employee handbooks from 1975, 1981-84, 1984-87, and 1987-91.
On November 27, 2012, the City filed a motion for a summary judgment. Referencing Harbin’s admission in his deposition, it argued that Harbin never had a written employment contract with the City; instead, it argued that the terms of his employment were established by rules promulgated by the City’s Civil Service Board. In support thereof, it attached to its motion a copy of the Civil Service Board Rules, as adopted by the Civil Service Board on May 25,1994.
Noting that Harbin had submitted excerpts from employee handbooks, the City asserted that those handbooks simply referred to the statutory provisions that set forth the terms and conditions of the PFRF. Also, citing this Court’s decision in Board of Trustees of Policemen’s & Firemen’s Retirement Fund of Gadsden v. Cary, 373 So.2d 841, 843 (Ala.1979), the City argued that, because Harbin was hired in 1972 and had not yet vested when the legislature amended • the PFRF in 1975, the legislature had the authority to amend the terms of the PFRF so that Harbin was no longer eligible to receive the benefits that were available under the PFRF that was in place when he was hired.
In Cary, employees of the City filed an action seeking to have their rights declared following the 1975 amendment of the PFRF. This Court held that the benefits of those employees who had retired before the effective date of the 1975 amendment and of those employees who had served for at least 20 years at the time the 1975 amendment became effective and continued to serve could not be reduced and thus were not subject to the modifications in the 1975 amendment. Cary, 373 So.2d at 842-43. However, with regard to employees who had not become eligible for retirement before the effective date of the 1975 amendment, this Court stated:
“[W]e are constrained to hold that their interests had not matured into an unqualified right to receive the benefits set out in the statutory plan. We view the completion of twenty years’ service as a condition precedent to the vesting of an absolute right to receive these benefits. Therefore, absent this vesting, the compensatory scheme, including the retirement plan, was subject to legislative modification. Opinion of the Justices, 249 Ala. 128, 30 So. [2d] 254 (1947); City of Birmingham v. Penuel, 242 Ala. 167, 5 So.2d 723 (1942); State ex rel Highsmith v. Brown Service Funeral Co., 236 Ala. 249, 182 So. 18 (1938); Hard v. State ex rel. Baker, 228 Ala. 517, 154 So. 77 (1934).”
373 So.2d at 843.[1]
On January 11, 2013, Harbin filed a response in opposition to the City’s summary-judgment motion. Although he admitted that the City had never given him a *693 written employment contract, he asserted that the City had assured him and had agreed with him that, if he worked 20 years, he would receive retirement benefits that would include a pension consisting of 50% of his wages, based on a sliding-scale provision that allowed for annual increases, and lifetime family medical benefits. Harbin also asserted that the assurances and agreement were explained and ratified by the chief of police and by the employee handbooks issued by the City. Finally, he asserted:
“The City interprets the Cary case too narrowly claiming that the 20 years must be served before the 1975 legislation. Instead, Cary holds that rights vest after the designated time of service. Vesting of rights implies a binding contract. Therefore, Harbin was eligible for a 20 year pension.”
The trial court conducted a hearing on the summary-judgment motions on January 15, 2013. During the hearing, Harbin asked the court to rule as a matter of law that a contract existed between him and the City and to allow a jury to determine whether there had been a breach of that contract and damage as a result of the breach. Harbin once again conceded that he did not have written contract with the City. Nevertheless, without specifying a basis for such a finding, he asked the trial court to rule as a matter of law that a contract existed and that that contract included a pension.
The City argued that the contract to which Harbin referred was actually an act of the legislature — i.e., the statute that created the PFRF — and that the PFRF was governed by a board of trustees. Citing Cary, it also argued that, in 1975, the legislature made changes to the manner in which retirees would be paid. The City further argued that the legislature controlled and set the terms and conditions of the PFRF and that the City contributed what it was required under the PFRF to contribute. It additionally argued that the fact that the City had employee handbooks that said that its police officers participated in the PFRF “doesn’t change anything” and “just says the officers are a part of this legislative scheme.” Finally, it argued that participating in a pension scheme set up by the legislature is not akin to entering into a contract with the City. Therefore, the City concluded, no contract existed between it and Harbin.
The City noted that litigation had ensued as a result of the 1975 amendment to the PFRF and that the defendant in that litigation was the board of trustees of the PFRF, not the City. See Cary, 373 So.2d at 843. It also argued that, because Harbin had not vested in 1975, the terms of his pension were subject to modification, as determined in Cary.
Harbin disputed the City’s argument that, under this Court’s decision in Cary, the terms of his agreement with the City were changed by the 1975 amendment because he had not yet served 20 years before the legislature adopted the 1975 amendment. Instead, he argued that Cary “says that rights to a contract vest when they’re made and when you complete your contract after twenty years, in this case forty years, then your rights are vested and you’re entitled to the agreement that you made.” Upon questioning by the trial court, Harbin indicated that it was his position that persons who were employed by the City at the time of the change in 1975 were locked into the retirement plan that was in place when they joined if they remained employed and served 20 years, that the plan could not be changed if the employee served 20 years, and that only people who were hired after the effective date of the 1975 amendment were subject to the 1975 amendment.
*694 Despite his previous arguments, during the hearing, Harbin also stated that his breach-of-contract claim was “not based solely on the change of the legislature” and that his case did “not hinge on the fact of whether or not the legislature changed [his] agreement.” He then argued:
“We would say it did not change the agreement. But even if we’re wrong on that, it still doesn’t take away the breach of contract claim. And I think really all the evidence needs to come out to determine whether there’s been a — first of all, is there a contract? We say certainly there’s a contract. But I think all the evidence is going to have to come out and then there’s going to be a motion to throw it out for lack of evidence or lack of damages.”
Thereafter, Harbin also stated: “If I agree to work for you and I work twenty years or forty years, there’s definitely a contract.” Further, when the trial court asked him “what are the four corners of that contract,” Harbin simply stated: “I didn’t ask you to define that.” Finally, Harbin’s counsel acknowledged the following:
“I think there’s a disagreement that there’s even a contract, enforceable contract. ...
[[Image here]]
“... Because they keep saying there’s no contract, there’s no evidence of a contract. I was trying to eliminate that issue. It was really a simplistic approach.”
After the hearing, the trial court denied Harbin’s motion for a partial summary judgment, denied the City’s motion for a summary judgment, and granted the City’s motion to strike Harbin’s affidavit and evi-dentiary submissions. The City asked the trial court to certify a controlling question of law for an appeal by permission pursuant to Rule 5, Ala. R.App. P. The trial court certified the requested controlling question, and the City filed a petition for permissive appeal in this Court. This Court granted the petition and ordered an answer and briefs.

Question Certified for Interlocutory Appeal

The trial court certified the following as the controlling question of law for this interlocutory appeal:
“Whether [Harbin] can successfully assert a contract claim against the City of Gadsden arising from deficiencies alleged in the ‘Policemen’s and Firemen’s Fund of the City of Gadsden, Alabama’ (PFRF)—
“where the legislature created PFRF and its governing board of trustees, and mandated the terms and conditions of PFRF in Act 226, Acts of Alabama 1959, as amended;
“where the terms of the fund were changed by the legislature subsequently, such latter terms remaining effective until the plan’s demise;
“where the Alabama Supreme Court determined in [Board of Trustees of Policemen’s & Firemen’s Retirement Fund of Gadsden v.] Cary, 373 So.2d 841 (Ala.1979), that certain employees had vested rights under the plan as it existed when [Harbin] was made a member of the plan, and that other member employees did not;
“where the most recent substantive terms affecting [Harbin] were passed by the legislature in 1980;
“where the employer-City paid all monies into the Fund as directed by the Act(s);
“where the City did not, nor has been shown to, possess any authority over the terms and conditions of PFRF.”

*695
Standard of Review

“ ‘ “This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the non-movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).” ’
“Prince v. Poole, 935 So.2d 431, 442 (Ala.2006) (quoting Dow v. Alabama Democratic Party, 897 So.2d 1035,1038-39 (Ala.2004)).”
Brown v. W.P. Media, Inc., 17 So.3d 1167, 1169 (Ala.2009).

Discussion

The City argues that we should reverse the trial court’s denial of its motion for a summary judgment and render a summary judgment in its favor. Specifically, it contends, as it did in its summary-judgment motion, that Harbin has not established that he had a contract with the City addressing his retirement benefits. First, the City points out that it is undisputed that Harbin did not have a written contract with the City. It also contends that, at most, Harbin appears to rely on the terms and conditions of the PFRF as it existed when he was hired in 1972, which terms, and conditions were created and governed by the legislature. The City notes that, despite this Court’s decision in Cary, Harbin has asserted that changes the legislature made to the PFRF in 1975 and 1980 do not apply to him because he served as a police officer for at least 20 years before retiring. However, it asserts, based on this Court’s decision in Cary, that the legislature had the authority to make the changes it made to the PFRF in 1975; that, as part of those changes, the legislature eliminated the provisions Harbin relies on; and that Harbin continued to participate in the plan and was bound by the changes. Therefore, the City concludes, it was not a party to a contract with Harbin, and the trial court should have entered a summary judgment in its favor.
In his brief to this Court, Harbin admits that he asked the trial court to hold that a contract existed between him and the City “without specifying the precise terms of the contract.” In response to the City’s summary-judgment motion, Harbin did not establish precisely what contract he contended the City had breached. At most, throughout his pleadings in the trial court, Harbin alleged that, because he paid into the PFRF for 20 years from 1972 until 1992, he became fully eligible for 20 years of retirement benefits as they existed when he was hired by the City. Harbin’s argument is based on the assumption that, *696 because he worked for 20 years after he was hired in 1972, he was entitled to the retirement benefits the City offered when he was hired in 1972. However, as the City argued in response to Harbin’s motion for a partial summary judgment, that assumption is erroneous, based on this Court’s decision in Cary. The City argues that, because Harbin had not worked for the City for 20 years at the time the statute governing the PFRF was amended in 1975, his rights had not vested, and the terms of the PFRF that applied to him were subject to modification by the legislature.
Nevertheless, even after the City presented its argument as to Cary, Harbin continued to pursue his argument, asserting:
“The City interprets the Cary case too narrowly claiming that the 20 years must be served before the 1975 legislation. Instead, Cary holds that rights vest after the designated time of service. Vesting of rights implies a binding contract. Therefore, Harbin was eligible for a 20 year pension.”
As set forth above, the holding in Cary was clear. Because Harbin had not retired and was not eligible to retire before the effective date of the 1975 amendment, his rights under the PFRF had not vested and were therefore subject to modification by the 1975 amendment. Nothing in Cary supports Harbin’s arguments to the contrary.
Even during the evidentiary hearing, as set forth in more detail above, Harbin never articulated, even when specifically asked by the trial court, exactly what contract he contends the City breached. At various times, he appeared to rely on oral representations made by the chief of police when he was hired, on the written provisions in the various employee handbooks for City employees, and on the statutes establishing and modifying the PFRF.
“In order to establish a breach-of-contract claim, a plaintiff must show ‘(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant’s nonperformance, and (4) damages.’ Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala.1995) (citations omitted).”
Ex parte Alfa Mut. Ins. Co., 799 So.2d 957, 962 (AIa.2001).
“ ‘ “If the burden of proof at trial is on the nonmovant, the movant may satisfy the Rule 56[, Ala. R. Civ. P.,] burden of production either by submitting affirmative evidence that negates an essential element in the non-movant’s claim or, assuming discovery has been completed, by demonstrating to the trial court that the nonmovant’s evidence is insufficient to establish an essential element of the nonmovant’s claim.” ’
“[Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala.1999) ] (quoting Justice Houston’s special concurrence in Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989), overruling Berner and adopting Justice Houston’s special concurrence in Berner as the accurate statement of the law) (emphasis omitted).”
Locke v. City of Mobile, 851 So.2d 446, 448 (Ala.2002). In its motion for a summary judgment, the City demonstrated that Harbin had not presented sufficient evidence to establish an essential element of his claim — i.e., that a contract actually existed between him and the City. Therefore, the burden shifted to Harbin to present substantial evidence to establish that there was a genuine issue of material fact as to the existence of a contract between him and the City. Because he did not present substantial evidence to establish such a *697 genuine issue, Harbin did not satisfy his burden. Therefore, the City was entitled to a summary judgment.[2]

Conclusion

For the above-stated reasons, we reverse the trial court’s judgment denying the City’s motion for a summary judgment and remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
STUART, BOLIN, PARKER, and MAIN, JJ., concur.
MOORE, C.J., recuses himself.

. The City also filed a response to Harbin's summary-judgment motion. In that response, it referred to its summary-judgment motion and relied on its arguments in that motion to oppose Harbin's motion.

. In his brief to this Court, Harbin again states that, because he worked and paid into the PFRF from 1972 until 1992, he was "fully eligible for 20 years of retirement benefits in 1992.” However, he also states that his breach-of-contract claim is not related to the statutes that created the pension. Instead, he states: "The essence of Harbin’s complaint is that if an employer provides a pension, an implied condition of the pension is that it be a properly funded pension.” However, as the City has argued, although the legislature established a pension through the PFRF, Harbin has not established that the City had a contract with him to provide him a pension. Also, any argument regarding the underfunding of the pension might be relevant to establish a breach of a contract, but it would not be relevant to establish the existence of a contract.