JALMER O. JOHNSON v. STATE EMPLOYEES' RETIREMENT ASSOCIATION.[1]

June 21, 1940.

No. 32,467.

[1]Reported in 292 N. W. 767.

112

J. A. A. *Burnquist*, Attorney General, *John A. Weeks*, Assistant Attorney General, and *William W. Watson*, Special Assistant Attorney General, for appellant.

*William H. Gurnee*, for respondent.

HOLT, JUSTICE.

By L. 1929, c. 191, defendant was created. The statute constitutes its articles of incorporation. The object was to provide pensions for state employes compelled to retire from service on account of old age or disability. The statute permitted the then state employes to become members of defendant upon paying an initiation fee; but persons thereafter entering the state's service thereby assume membership in defendant. From the salary of all members the state deducts three and one-half per cent every month for the retirement fund, of which the state treasurer is custodian.

The state investment board is given authority to invest so much of the retirement fund as is not immediately needed for payment of annuities or refunds. A state employe who has been such for 20 years and has attained the age of 65 years, or has been a state employe for 35 years, is eligible for retirement. Upon such retirement he shall receive an annuity for life equal to 50 per cent of his average salary for the last five years of his service provided it shall not exceed $150 per month. All annuities shall be paid in equal monthly payments "and shall not be increased, decreased or revoked except as provided in this act, but the retirement board may ratably reduce such annuities whenever the condition of the maintenance fund shall require such reduction." The foregoing may sufficiently indicate the provisions of the original act for the purposes of this decision.

Plaintiff entered the employ of the state in 1901. He voluntarily became a member of defendant in 1929 and retired February 1, 1937. His annuity, fixed by the statute then in force at $110.05 per month, was paid each month up to and including December, 1938. For the month of January, 1939, he received only $17.95; for February, $83.45; and for March, $48.09. No claim .is made that he is entitled to recover more than he has been paid for those months. On April 22, 1939, L. 1939, c. 432, 3 Mason Minn. St. 1940 Supp. §§ 254-1 to 254-19a, was approved, effective the next day. This act amended the original law, L. 1929, c. 191, and the amendments thereof (3 Mason Minn. St. 1938 Supp. §§ 254-1, 254-4, 254-9, 254-10, 254-11, and 254-19). The here important amendments were an appropriation of $50,-000 to the .retirement fund; a provision for more of a reduction according to a sliding scale of the employe's monthly salaries, such reduction going to the retirement fund; and this provision, which occasions this suit: "provided that no such retirement annuity shall exceed the sum of $100 per month." § 254-11. As a result of this amendment where-

by the retirement fund was replenished, plaintiff was paid $100 for April, 1939, and each succeeding month. He claims that he should be paid the amount payable at the time of his retirement, and brought this suit for a declaratory judgment in his own behalf and for 30 other retired members whose monthly annuity at the time of retirement was in excess of $100 up to $150 per month. He states two causes of action, first, to have it adjudged that his annuity for April, 1939, and succeeding months is $110.05 per month; and, second, failing in the first, that he be granted at the rate of $110.05 for the first 22 days in April, before c. 432 took effect. Findings and conclusions of law were in favor of plaintiff on the first cause of action, thereby eliminating the second. From the judgment, defendant appeals.

The appeal presents the one legal question whether plaintiff has a vested contract right to the amount of the monthly annuity fixed by the statute at the time of his retirement so that a subsequent statute changing such annuity would be impairing a contract and violative of the constitution. Defendant is a creature of statute. It was given no power to contract with members. The provision in the law from the first (still retained) that the monthly annuity due a beneficiary may not be paid unless the condition of the retirement fund permits indicates no absolute contract obligation. On the other hand, the whole setup is statutory, and a statute may be repealed or altered as the legislature deems just and proper. It appears to us that the legal question presented has already been determined in this state by Hessian v. Ervin, 204 Minn. 287, 283 N. W. 404, involving this defendant. The first paragraph of the syllabus is:

"The beneficiary has no vested right in a pension granted by government except as payments become due him absolutely under the law."

And in Gibbs v. Minneapolis F. D. Relief Assn. 125 Minn. 174, 176, 145 N. W. 1075, 1076, Ann. Cas. 1915C, 749, the court said:

"As against the state there is no vested right in the pension accruing in the future from month to month. It may be taken away. The whole pension system may be abrogated without a violation of the Constitution. A pension already accrued cannot be taken away."

It is true that in Stevens v. Minneapolis F. D. Relief Assn. 124 Minn. 381, 384, 145 N. W. 35, 36, 50 L. R. A. (N. S.) 1018, it was stated that the right of a member of the defendant's organization was "wholly unlike the ordinary pension, such as that granted by the Federal government to dependent soldiers," and that one who had been granted a pension under the rules controlling defendant had a vested right of which he could not be deprived unless by due process of law. However, in the statutes at the time this plaintiff retired no right was given him to recover the monthly annuity as it accrued from anyone or anything except the retirement fund. It was plain by 1939 that the plan established by L. 1929, c. 191, was actuarially faulty and must be changed. The change complained of here was the reduction of the maximum monthly annuity to $100. It could no doubt have been fixed at that or any other sum in the first place. And it can hardly be contended, in view of the situation, that the legislature did not intend the reduction to include those already on the pension roll as well as those to be placed thereon in the future. The law was not retroactive; it related to future monthly payments. The cases cited and discussed in Hessian v. Ervin, 204 Minn. 287, 283 N. W. 404, and Gibbs v. Minneapolis F. D. Relief Assn. 125 Minn. 174, 145 N. W. 1075, lead to the conclusion that L. 1939, c. 432, was intended to affect plaintiff and those in whose behalf he sues, and that no vested rights of his or theirs are thereby impaired or devested. In addition to the authorities

cited in the two cases referred to, we add MacLeod v. Fernandez (1 Cir.) 101 F. (2d) 20; Gróves v. Board of Education, 367 Ill. 91, 10 N. E. (2d) 403; City of Dallas v. Trammell, 129 Tex. 150, 101 S. W. (2d) 1009, 112 A. L. R. 997. In the Dallas case the effect of the later act was to reduce the monthly allowance of the pensioner from $183.33 per month, as provided by the act in effect at the time of his retirement, to $72.36 per month. The later act was held valid as against the claim that it was violative of the constitutional mandate that vested rights cannot be impaired. A paragraph of the syllabus reads:

"For a right to be within the protection of the Constitution it must be a vested right and not a mere expectancy based upon an anticipated continuance of an existing law."

And in the opinion, after referring to the rule adhered to by some courts that when the particular event has happened upon which the beneficiary becomes entitled to a pension he thereby acquires a vested right which the legislature may not disturb, this statement is made [129 Tex. 157]:

"There is another line of decisions to the effect that as pensions granted to employees of the State or its municipalities are purely of statutory origin, the employees, in making contracts of employment under which the right to participate in the pension fund accrues, do so in contemplation of the reserved right of the Legislature to amend or to repeal the laws on which the pension systems are founded; and therefore, the right to participate in the fund, even though arising from the contract, is based upon the anticipated continuance of existing laws. Under this theory, there can be no vested interest in future installments of pensions which will prevent the Legislature from repealing the law upon which the system is founded, or modifying the law in such way as to diminish the amount of future monthly payments. This is true even though the pension fund is made up partly with deductions from salaries or wages agreed to be paid

participating employees. It is well settled that the mere circumstance that a part of a pension fund is made up by deductions from the agreed compensation of employees does not in itself give the pensioner a vested right in the fund, and does not make it any less a public fund subject to the control of the Legislature."

Supporting authorities are cited and discussed. So far as this court has considered so-called pension cases, the trend accords with the views expressed in the Dallas case.

We cannot make any distinction between those members who joined defendant voluntarily and those who became such by so-called compulsion. There may well be some objection to providing a pension based on a certain percentage of the salary and limiting the maximum to any specified amount. But insofar as the objection is based upon inequality or injustice as between employes, it is for the legislature and not the courts. It may be said that as to plaintiff and those placed on the pension roll before him, no wrong has been done, for they have received much more from the retirement fund than was deducted from their salaries. The retirement fund was not contributed to by the state prior to April 23, 1939, and its only source was from deductions from the salaries of employes; but that can be of no importance from a legal point for no power was given defendant to contract with its members for the pension or annuity. That was fixed by the legislature.

We are aware that there are authorities holding that when a pensioner is placed on the pension roll or when the event occurs which makes him eligible he obtains a vested right to the then rate, which cannot be disturbed or impaired by subsequent legislation. We refer to O'Dea v. Cook, 176 Cal. 659, 169 P. 366 (but see Casserly v. City of Oakland, 6 Cal. [2d] 64, 56 P. [2d] 237); Trotzier v. McElroy, 182 Ga. 719, 186 S. E. 817; Roddy v. Valentine, 268 N. Y. 228, 197 N. E. 260; McBride v. Allegheny County Retirement Board, 330 Pa. 402, 199 A. 130; State ex rel. Teweles v. Public

School Teachers' A. & R. Fund Trustees, 235 Wis. 385, 291 N. W. 775.

As to the second cause of action, we think plaintiff's contention is correct that for the first 22 days of the month of April, 1939, the rate of $110.05 per month applies. Defendant contends that the pension did not accrue until the first part of the following May when due and payable, that the pension is for the month and not for the day. We think it right to say that it accrued under the old law until the new took effect, and that for the month of April, 1939, the pension should be computed at $110.05 for the first 22 days and at $100 for the balance of that month.

The judgment is reversed with direction to enter judgment in harmony with this opinion.

