WALTER O. LICKERT ET AL., APPELLEES, V. CITY OF OMAHA
ET AL., APPELLANTS.

12 N. W. 2d 644

FILED JANUARY 7, 1944.   No. 31606.

*Harold C. Linahan, W. W. Wenstrand, G. H. Seig* and *Edward Sklenicka,* for appellants.

*Thomas J. Sheehan, Jr.,* and *Yale C. Holland, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

In this action the plaintiffs, as members of the police force of the city of Omaha, sought a declaratory judgment declaring their rights, duties and liabilities under the pension provisions of the Omaha city charter, a declaration that a charter amendment was unconstitutional and void and for other relief. The trial court entered a judgment declaring the status of plaintiffs under the charter provisions. From that judgment the defendants appealed. We reverse the judgment of the trial court.

In 1921 the Legislature adopted "An act to incorporate Metropolitan cities, and pertaining to the government, powers and duties of such cities" and to repeal certain provisions of existing law. This act contained article V, entitled "Police Department." See Laws 1921, p. 496 and following. This act is now found in sections 14-601 to 14-619, inclusive, Comp. St. 1929, being chapter 14, art. 6.

In 1922 the city of Omaha, being a metropolitan city, adopted the provisions of said article as a part of its home rule charter under the provisions of section 5, art. XI of the Constitution of the state of Nebraska.

Subsequently, in 1940, the city of Omaha proposed to amend its home rule charter in, among others, the provisions of part of said chapter 14, art. 6. The district court for Douglas county enjoined the placing of the proposal upon the ballot at the election to be held on November 5, 1940. On appeal this court dissolved the injunction and dismissed the petition upon which it was issued. *Munch v. Tusa,* 140 Neb. 457, 300 N. W. 385. In that opinion we

held: "The police relief and pension fund, set forth in article 6, ch. 14, Comp. St. 1929, may be amended by a proposed ordinance adopted by the city council and submitted to the electors, where the proposed ordinance affects merely the form of the relief and pension law and does not destroy the purpose for which such fund was created."

Further, in *Munch v. Tusa, supra,* we considered the proposition that provisions for pensions of policemen and firemen in the Omaha city charter could not be amended by the city in the manner contemplated, and this, on the contention that to do so, would make the charter provisions in conflict with the state law on the matter; in other words that the amendment "should give way to state legislation on the subject." For reasons stated in the opinion we held when the city adopted its 1922 charter that "as to the city of Omaha," the legislative act of 1921 (which includes chapter 14, art. 6, *supra*) "lost its qualities as a statutory charter or law imposed by the sovereign power of the state, and in lieu thereof, by virtue of an explicit constitutional grant, its terms then existing became a home rule charter created and to be thereafter continued in force at the will of the grantee municipality lawfully expressed, every section of which was expressly made subject to its own lawful amendments. No other legislative charter, as such, was thereafter applicable to Omaha than the law thus adopted." We further held "Outside of the provisions contained in the Omaha charter, there is no statutory provision whatever relating to the subject-matter of the proposed amendment, the adoption of which is enjoined in this proceeding. * * * And furthermore, the sovereignty of the state having refrained from directly expressing its will by applicable statute on the subject here involved in this litigation, we may not, until such expression actually occurs, consider the matter of firemen's relief and pensions defined and regulated by the Omaha charter as 'a matter of exclusively state concern.'"

Thereafter the city, by ordinance, passed on March 3, 1942, submitted the amendments at an election held on May 12, 1942. The amendments were passed and became a part

of the city charter effective on June 30, 1942, at midnight. So far as it affects the police department the changes effected by the amendment are set out in the discussion in *Munch v. Tusa, supra*, and will not be restated here, except in so far as it may be necessary to discuss the questions presented.

The provisions of the charter as originally adopted provided, in effect, that when any member had served twenty years or more in the police department and was fifty years or over of age, he had the "absolute right" on application to retire and be allowed a pension equal to half his salary at the time of retirement. The charter, as amended, changed the period of service to 25 years or over and the age to 55 years or over and reduced the pension to be allowed.

The plaintiffs, as members of the police department of the city of Omaha, brought this as a representative action seeking a declaratory judgment to determine their rights, duties, and liabilities.

It was alleged that plaintiff Lickert had served for over 22 years but was 46 years of age and hence ineligible for retirement and pension; that plaintiff Berger was 50 years of age but had served 19 years and was likewise ineligible; that plaintiff Shoehigh was 49 years of age and had served 19 years and was likewise ineligible.

Plaintiffs alleged the capacities of the various defendants, the passage of said chapter 14, art. 6; its provisions including the deduction, by the city comptroller, of $1 per month from their pay to be, by the comptroller, paid into the police relief and pension fund; and the provisions hereinbefore recited as to the age and length of service necessary as a basis for retirement.

Plaintiffs further alleged that they entered the service in the police department of the city with the agreement that the pensions provided by the statutes above cited were a part of the compensation for their services; that they permitted the city to withhold the $1 monthly to assist in the creation of the pension fund; that thereby there was created a contract between the plaintiff and defendant city; that

plaintiffs have performed their part of the contract and desire to continue to perform; that the city is obligated to perform the contract under the terms of the law as it existed when they entered the service; that they have rights and interests in the pension fund which may not be denied or disturbed so long as plaintiffs comply with the contract and the law as it existed when the alleged contract was made.

Plaintiffs further alleged the approval of the amending ordinance by the vote of the electorate and set out an analysis of its terms. They alleged that the adoption of the amendments was an attempt to cancel their contract and they have thereby been deprived of their property rights.

They further alleged that the proposal to amend as adopted was unconstitutional as violative of four separate sections of our state Constitution and of two separate sections of the Constitution of the United States. They further allege that chapter 14, art. 6, *supra*, is a part of the general laws of the state of Nebraska, of state-wide concern and not subject to repeal or amendment by the city of Omaha or its electors.

Finally it is alleged that a controversy exists between the plaintiffs and defendants with respect to the validity of said amendment and that the defendants threaten to enforce its provisions.

Plaintiffs pray for a declaration of the rights, duties and liabilities of the parties, a determination that the proposed amendment is unconstitutional and void and for other relief.

Defendants answering denied generally, alleged that the defendant city was one of the metropolitan class operating under a home rule charter adopted in 1922 pursuant to section 5, art. XI of the Constitution; alleged the proceedings by which the amendment in question was adopted and that it went into effect at midnight, June 30, 1942; and that the pension program existing prior to the amendment was actuarily unsound and discriminating and the pension fund being rapidly depleted. Defendants prayed for a dismissal of plaintiffs' petition and other relief.

At the trial plaintiffs offered evidence of their ages and length of service, as pleaded. They and other members of the department testified that when they entered the employment of the city as policemen they were familiar with the provisions of law relating to salaries and pensions; that the pension provisions were taken into consideration when they applied for and accepted employment; that the pension was their main reason for entering the service and that they had relied upon receiving the pension as a protection to themselves and their families.

They also testified that moneys received from rewards, witness fees and special services had been paid into the pension fund, as provided in the law; that there had been deducted the $1 monthly from their salary and that it had been placed in the fund and that compliance had been had with the provisions relating to disability payments and deductions.

It further appears from plaintiffs' evidence that one of the plaintiffs, and other members of the department, entered the employment of the city before the enactment of chapter 14, art. 6, by the legislature and, of course, also before its adoption by the city as a part of its home rule charter.

Plaintiffs also offered "the Charter as contained in the statutes, at Article 6 of Chapter 14 of the Compiled Statutes of Nebraska for 1929, and all of the sections thereof * * * which constitute the provisions of the Charter of the City of Omaha, the rules of the police department, and the pension of the department, and the members thereof." Pursuant to said offer there were received in evidence sections 14-601 to 14-619, inclusive, Comp. St. 1929.

Plaintiffs offered "the amendment to the Charter * * * passed by the City Council * * * and submitted to the electorate * * * which proposed ordinance went into effect * * * and which amendment, by virtue of said election, was passed and became a part of the City Charter * * * and became effective on June 30, 1942, at midnight." Pursuant to said offer, ordinance 15036 was admitted in evidence.

Defendants offered testimony showing the receipts and disbursements of the pension fund for the five-year period before the trial which tended to show that the fund was being rapidly depleted and unable to meet the future fixed charges against it.

The trial court entered a "declaratory judgment" which we now set out in full:

"The court in passing on this case has followed the law established in the State of Nebraska and many other states of the Union. These courts have repeatedly held that pensions are not gratuities, but a part of the stipulated compensation, and that the purposes of pensions are to promote efficiency and encourage continuity of service. Pension is an integral portion of the contemplated compensation set forth in the contract of employment between the City and members of the Police Department, and the right to a pension becomes a vested one upon acceptance of the employment by the applicant.

"The court therefore finds that these plaintiffs and all others similarly situated who entered the employment of the City before the enactment of the new pension plan are not subject to the provisions of the new plan and are entitled to continue their services under the old plan. All applicants for employment as police officers and those appointed to the force since the passage of the Amendment, as well as those who were on probationary service at the time of the passage of the Amendment, are to continue their services under the provision of the new pension plan."

From this decree the defendants appeal assigning three errors. Plaintiffs as appellees, in their brief, discuss a number of propositions, however, they ask that the judgment of the trial court be affirmed.

This court has repeatedly said: "It is a rule of universal application in appellate proceedings that the examination of the reviewing court, whether on appeal or writ of error, will be confined to the questions determined by the trial court." *Central Nebraska Public Power & Irrigation District v. Walston,* 140 Neb. 190, 299 N. W. 609. This rule ap-

plies to appeals under the declaratory judgment act. Comp. St. 1929, sec. 20-21,146; 16 Am. Jur. 342; Borchard, Declaratory Judgments, 253.

What questions were determined by the trial court in its declaratory judgment? In the first paragraph of the judgment the trial court declared that pensions are not gratuities; that their purpose is to promote efficiency and encourage continuity of service; that pensions are a part of the stipulated compensation, and an integral portion of the contemplated compensation set forth in the contract of employment between the city and members of the police department, and that the right to the pension becomes a vested one upon acceptance of employment.

The finding in the second paragraph is that the plaintiffs and all others similarly situated, having entered the employment of the city before the enactment of "the new pension plan" (Ordinance 15036) are not subject to its provisions but are entitled to continue their service and to receive the benefits of the pensions provided in the "old plan" (charter provision adopted from chapter 14, art. 6, *supra*). The trial court further found that those appointed to the service since the passage of the "amendment" (Ordinance 15036) and those on probationary service are subject to the pension provisions of the new plan (Ordinance 15036). This finding necessarily presupposes a finding by the trial court that the charter provisions adopted from chapter 14, art. 6, have been amended and that the amendment is constitutional, valid and in full force and effect. The finding is that the amendment does not apply to these plaintiffs, and others similarly situated, who entered the employment of the city as policemen and had passed their probationary service before the effective date of the charter amendment.

The defendants here assign as errors relied upon that the trial court erred: "(1) * * * in holding that plaintiffs obtained vested rights in the pension provisions of the law existing at the date of their employment; (2) * * * in holding that plaintiffs, through their contract of employment, had obtained pension rights of which they never could be divest-

ed, even prior to their fulfillment of all the necessary requirements for retirement; (3) * * * in holding that all those who entered the employ of the city of Omaha as police officers prior to the enactment of the new pension plan were not subject to the provisions of this new law."

These assignments of error present the matters which we are called upon to decide.

We have heretofore set out that plaintiffs alleged they entered the service with the agreement that the pension as provided at the time was a part of their compensation and that they "permitted" the defendants to withhold from their salaries the sum of one dollar each month to assist in the creation of the pension fund; and that "thereby there was created * * * a contract." There was no evidence of any such agreement having been made. The charter provision as it existed prior to the amendment provided for payment to the treasurer of moneys from various sources "to constitute a police relief and pension fund, viz.: * * * sixth. A sum not to exceed one dollar of the monthly pay, salary or compensation of each member of the police department, which sum shall be deducted monthly by the comptroller from the pay, salary or compensation of each and every member of the police department, and the comptroller is hereby authorized, empowered and directed to deduct the sum as aforesaid and forthwith to pay the same to the treasurer of the said police relief and pension fund." Comp. St. 1929, sec. 14-610. The provisions of this act do not support the construction that the members "permitted" the deduction of sums from their pay. The deduction, by the clear provisions of the act, is mandatorily made before their salary is paid.

A provision of the charter, prior to the 1942 amendment, was "Whenever any person * * * shall have been duly appointed or selected and sworn and has served for twenty years or more, in the aggregate, as a member, * * * of the regularly constituted police department * * * being of the age of fifty years, or over, such person shall have the absolute right and be entitled * * * to retire from active service

on such police force, and shall be allowed a pension equal to half his salary at the time of retirement * * * ." Comp. St. 1929, sec. 14-613. Under this provision the "absolute right" "to retire" and "be allowed a pension" does not arise when the member is "appointed or selected and sworn" but *whenever* the member has served 20 years or more and has become 50 years, or over, of age. Clearly until those conditions are met the "right" is not "absolute."

The two propositions just above discussed and the contentions of the plaintiffs, to the extent accepted by the trial court in its declaratory judgment, have been before the courts of the country repeatedly. For reasons stated in the opinions, the holdings have been against the position taken by the plaintiffs here. The decisions fully sustain the following propositions. We have been cited to no authorities upon which a contrary holding could be based.

The existence of legislation making pension and retirement provisions for members of a police department and the acceptance or retention of employment as a member of a police department does not establish a contract, between the member and the city, that such members will thereafter be granted the retirement and pension benefits provided in such legislation.

The right of the legislative body to amend the pension law is not affected by the fact that a given sum was required by law to be deducted and was deducted each month from the police officer's pay by the disbursing officer and paid into a pension fund; such a provision in legal effect says that the officer shall receive each month the net amount payable to him.

Until the particular event happens upon which the pension is to be paid there is no vested right in the police officer to such payments.

The legislative change amending the pension provisions, previous to the happening of one or more of the conditions mentioned in the act, impairs no absolute right of property in the police officer. 40 Am. Jur. 981; 43 C. J. 818; 16 C. J. S. 754; 1 Dillon, Municipal Corporations (5th ed.) 754;

*Pennie v. Reis,* 132 U. S. 464, 10 S. Ct. 149; *Dodge v. Board of Education,* 302 U. S. 74, 58 S. Ct. 98; *Lage v. City of Marshalltown,* 212 Ia. 53, 235 N. W. 761; *Talbott v. Independent School District,* 230 Ia. 949, 299 N. W. 556; *State v. Board of Trustees,* 121 Wis. 44, 98 N. W. 954; *State v. Gantter,* 240 Wis. 548. 4 N. W. 2d 153; *Johnson v. State Employees' Retirement Assn.,* 208 Minn. 111, 292 N. W. 767; *Salley v. Firemen's & Policemen's Pension Fund Commission,* 124 N. J. Law 79, 11 Atl. 2d 244; *Bader v. Crone,* 116 N. J. Law 329, 184 Atl. 346; *Hughes v. Traeger,* 264 Ill. 612, 106 N. E. 431; *Kern v. State,* 212 Ind. 611, 10 N. E. 2d 915; *Dodge v. Board of Education,* 364 Ill. 547, 5 N. E. 2d 84; *Jordan v. Retirement Board,* 35 Cal. App. 2d 653, 96 Pac. 2d 973; *State v. Board of Education,* 155 Kan. 754, 129 Pac. 2d 265; *Sweesy v. Los Angeles County Peace Officers' Retirement Board,* 17 Cal. 2d 356, 110 Pac. 2d 37; *Butterworth v. Boyd,* 12 Cal. 2d 140, 82 Pac. 2d 434, 126 A. L. R. 838; *Friel v. McAdoo,* 101 App. Div. 155, 91 N. Y. Supp. 454; *City of Birmingham v. Penuel,* 242 Ala. 167, 5 So. 2d 723; *State v. City of Tampa,* 119 Fla. 556, 159 So. 292; *Miller v. Price,* 282 Ky. 611, 139 S. W. 2d 450; *City of Dallas v. Trammell,* 129 Tex. 150, 101 S. W. 2d 1009; *Board of Education v. City of Louisville,* 288 Ky. 656, 157 S. W. 2d 337; *Arnold v. Browning,* 294 Ky. 164, 171 S. W. 2d 239; *MacLeod v. Fernandez,* 101 Fed. 2d 20. See Annotations, 54 A. L. R. 945; 98 A. L. R. 506; 112 A. L. R. 1010; 137 A. L. R. 252.

The authorities cited by the plaintiffs do not support their position on the issues here presented. Plaintiffs cite 19 R. C. L. 726 and 43 C. J. 813. These citations go to the constitutional validity of a pension act. That question is not presented here. Plaintiffs cite the statement found in *Hammond v. City of Fulton,* 220 N. Y. 337, 115 N. E. 998, to the effect that there was read into the contract of employment of "a call fireman" the provision of the statute providing for payment of certain sums to him if injured or his representatives in case of death. The question there presented was whether or not the widow of a deceased call fireman

had a valid claim against the city under the law as it existed when her husband was killed. The power of the lawmaking body to change the act before the injury and death of the fireman was not involved nor decided.

Plaintiffs cite the statement found in *Schieffelin v. Berry*, 127 Misc. 178, 215 N. Y. Supp. 341, that "The granting of a pension or retirement allowance is sustainable only on the ground that it is deferred compensation." The question presented and decided in that case was whether or not the municipal assembly had the power to amend a state statute relating to retirement allowances. Just why the quoted sentence appears in the opinion is not clear. Similar statements in the authorities cited by plaintiffs appear to be intended to show why a constitutional barrier to the payment of public funds for private purposes does not apply to pensions. In any event the quoted sentence does not go to the questions here presented. The same may be said as to the quote from *People v. Abbott*, 274 Ill. 380, 113 N. E. 696, that pensions are "in effect, pay withheld to induce long-continued and faithful service, * * * . Such pensions generally are not considered donations or gratuities." The quote is taken from 1 Dillon, Municipal Corporations (5th ed.) 750, sec. 430, and is a part of a statement dealing with the constitutionality of statutes granting pensions. That constitutional question was an issue in the cited case. It is not an issue in this appeal. The same situation existed in *Hayes v. Mayor & Council of City of Hoboken*, 93 N. J. Law 432, 108 Atl. 868, where a statute granting a pension was attacked on the ground that it was unconstitutional as violative of a provision prohibiting a city from giving any money to any individual. The court, holding against the contention, said: "The moneys paid for pensions are a part of the compensation to be paid for the services rendered by members of the force, and are an inducing cause to their enlistments."

The same situation applies to the quotation from *O'Dea v. Cook*, 176 Cal. 659, 169 Pac. 366. There a member of the police force was injured in line of duty in 1912. He died

as a result of his injuries in 1915. At the time of the member's injury, the law provided a pension for his widow. In 1913, and while the member was living, the law was amended to provide for a pension if death occurred within a year from the date of the injury. The court stated that if a pension were a gratuity it would be void under the Constitution but that "where, as here, services are rendered under such a pension statute, the pension provisions become a part of the contemplated compensation for those services and so in a sense a part of the contract of employment itself."

Plaintiffs next cite the statement found in *Aitken v. Roche*, 48 Cal. App. 753, 192 Pac. 464, that "the right to pension is a vested one, and that it enters into the contract of employment *when a man enters the police department.*" (Emphasis supplied.) The case of *O'Dea v. Cook, supra,* is cited. Subsequently in the opinion it is said: "In the *O'Dea* case it was held that the right to a pension entered into the contract of the employment of a policeman" and "Since, under the *O'Dea* case, the right to participate in the pension fund enters into the contract of employment * * * ." The issue decided in the *O'Dea* case was that the amendment of 1913 had a prospective and not a retrospective effect and hence, so far as the widow's claim was concerned, the act as it existed at the time of the injury, controlled. We do not find anything in the opinion holding that the right to the pension was a "vested one" nor that the right entered into the contract of employment "when a man enters the police department." These questions were not presented. The opinion itself negatives any such conclusions. The court there says: "Cases are abundant, many of them are cited by appellants, where pensions are predicated merely upon the death occurring during the period of service. As death, and death only, by the terms of these statutes fixes the right to a pension, a repeal before death operates to destroy the pension right." The court further said that the widow had "no vested right in the pension until the death" of her husband. The "when a man enters the police depart-

ment" has no sustaining language in the *O'Dea* opinion. If "a repeal before death operates to destroy the pension right" then it seems clear that the right to a pension, would not become a "vested one" before death in the sense that it was not subject to subsequent amendment or repeal of the authorizing law. It may be suggested here that if in a case where "death, and death only * * * fixes the right to a pension, a repeal before death operates to destroy the pension right" then in a case where 20 years or more of service and 50 years or over of age fix the right to a pension (Comp. St. 1929, sec. 14-613) that an amendment of those provisions before those conditions are met "operates to destroy the pension right" under the act as it existed prior to the amendment.

We return now to *Aitken v. Roche, supra.* In that case the petitioner had been retired when the pay of a patrolman was $102 a month. Subsequently the pay was increased to $140 a month. The petitioner sought to have his pension based upon the higher pay rate and accordingly increased. For reasons stated in the opinion the court held that he was entitled to a pension based upon the pay of a patrolman when the installments "successively become due." The reasoning of the court might sustain a conclusion that the petitioner had a vested right in a pension, but not in one for a fixed amount. It might also sustain a conclusion that, if a pension could be increased for the reasons stated in the opinion, if the voters saw fit to do so, they could also decrease the amount of the pension. Such is the holding in the later case of *Casserly v. City of Oakland,* 6 Cal. 2d 64, 56 Pac. 2d 237.

Plaintiffs also cite the statement found in *Dryden v. Board of Pension Commissioners,* 6 Cal. 2d 575, 51 Pac. 2d 177, that "It has been clearly held that the pension provisions of the city charter are an integral portion of the contemplated compensation set forth in the contract of employment between the city and a member of the police department, and are an indispensable part of that contract, *and that the right to a pension becomes a vested one upon ac-*

*ceptance of employment by an applicant.* (Emphasis supplied.) This opinion was later adopted by the supreme court of California in *Dryden v. Board of Pension Commissioners,* 6 Cal. 2d 575, 59 Pac. 2d 104.

The citations of authority given in the opinion do not support the language quoted. The *O'Dea* and *Aitken* cases have been analyzed here. Additional citations are *French v. Cook,* 173 Cal. 126, 160 Pac. 411, and section 183 of the city charter. We find nothing in the *French* case to support the language used. It involved the right of a widow to a pension. The questions presented were questions dealing with procedure and the powers of the trustees of the pension fund to make a judicial determination of facts. The only reference in the opinion to vested rights which we find is "the widow has a vested right from the date of death of her husband" and "The party having a vested right in the performance of the act * * * has also the right to have his claim as to the facts judicially determined." The charter provision quoted in the *Dryden* case to sustain the language relied upon by the plaintiff is "Whenever any member * * * shall die * * * then an annual pension shall be paid * * * to his widow * * *." The language of the court in the *O'Dea* case now becomes pertinent to our problem here. "As death, and death only, by the terms of these statutes fixes the right to a pension, a repeal before death operates to destroy the pension right."

In the case of *Risley v. Board of Civil Service Commissioners,* 140 Pac. 2d (Cal. App.) 167, the court quoted the language of the *Dryden* case hereinbefore set out, wherein the *O'Dea* and *Aitken* cases are cited, and said: "We do not find this statement controlling in our case because it is plainly *dictum* and the cases cited by the author of the opinion, which was not written in but was adopted by the Supreme Court, do not support the statement. *The cases, where the question is before the court, agree that the right to a pension is not a part of a contract which, having been entered into, cannot constitutionally be altered.*" (Emphasis supplied.)

In view of the strong reliance placed upon the California decisions by the plaintiffs we ,venture also to quote from three of the more recent decisions of that jurisdiction.

In *Jordan v. Retirement Board, supra,* the court said: "Pension rights do not vest at the time of the enactment of the law, but only upon the happening of the contingency or event upon which the right thereto accrues and at any time before the happening of the contingency upon which the right to the pension vests the law granting such right is subject to alteration or repeal."

In *Sweesy v. Los Angeles County Peace Officers' Retirement Board, supra,* the supreme court clearly recognized that the officer's "pension rights vested at the time he was retired from service, that is, upon the happening of the contingency upon which the pensionable right depended," citing both the *O'Dea* and *Jordan* cases as authority; and further with reference to the widow's pension (citing the *Jordan* case) held it to be "an increase of benefits which may be taken away before the right vests by the happening of the event calling for the fulfillment of the grant" and "as to any prospective grantee of the pension it * * * may be taken away at any time before it becomes vested in her."

In the case of *Butterworth v. Boyd, supra,* the supreme court of the state said: "It is well settled that public employees have no vested right in any particular measure of compensation or benefits, and that these may be modified or reduced by the proper statutory authority."

We are unable to accept the California cases cited by the plaintiffs as authority for the propositions advanced in the quotations.

Plaintiffs further cite *Stevens v. Minneapolis Fire Department Relief Assn.,* 124 Minn. 381, 145 N. W. 35. There the question was whether or not the pensions, payable from the pension fund of the association, were a gratuity. The court held that because of payments made by the member into the fund he had vested "in him substantial rights of which he cannot be deprived except by due process of law" that his rights were analogous to those "possessed by mem-

bers of mutual benefit societies" and that the pension was not a gratuity. The issue there determined is not presented in the instant case.

Plaintiffs cite the language in *State v. City of Minneapolis,* 174 Minn. 594, 219 N. W. 924, as to when pensions are not gratuities. There the question was whether or not the injured laborer was an employee of the city during the time that he was receiving compensation. The court stated rules as to when a pension was a gratuity and when it was not and found that to grant a pension would be a gratuity for the period covered by a part of the claim. The decision is not of assistance here.

Plaintiffs also rely upon three statements found in *State v. Love,* 89 Neb. 149, 131 N. W. 196, to the effect that a fireman's pension is not a gratuity, that it may be classified as compensation for services rendered and that it forms an inducement to enter and remain in the service and "in a sense is part of the compensation paid for those services." These statements were made in deciding the questions presented by a constitutional attack upon the act, similar to that presented in other cases cited by the plaintiffs. The statements do not go to the questions presented in the instant case. It is to be noted however that this court, in the course of the opinion, said, "Of course, the fireman must * * * have retired *while the law was in force* * * * ," the relator "earned a right to his pension under that act *so long as it shall remain in force*" and "the legislature may transform that duty (moral obligation to its injured firemen) into a legal obligation * * * and, *so long as the law is not repealed,* that obligation will be enforced by the courts."

The syllabus, which was prepared by the writer of the opinion, says: "A fireman entitled to a service pension * * * may only receive the pension provided by law *at the time of his retirement.*" These statements negative any contention that this court determined that a fireman had vested contractual rights that could not be modified or taken away by amendment or repeal of the law prior to "the time of his retirement." See the discussion of *State v. Love, supra,* in *Lage v. City of Marshalltown, supra.*

Finally plaintiffs cite statements from *Allen v. City of Omaha*, 136 Neb. 620, 286 N. W. 916, that "while it is true that a policeman's pension is classified as a part of his compensation and not a gratuity, and for which a city is ultimately liable * * * " and "the moneys in the (police relief and pension) fund do not belong to the city * * * but are * * * held * * * in trust, for the benefit and protection of those who under the terms of the act may become claimants against such fund." It is obvious that this case did not decide any of the issues here presented.

For the reasons stated herein it is held that the pension rights of these plaintiffs are to be determined by the charter provisions of the defendant city which became effective at midnight June 30, 1942. The judgment of the district court is reversed and the cause remanded with directions to enter a declaratory judgment in accord with this opinion.

REVERSED, WITH DIRECTIONS.

PAINE, J., dissents.