339 P.2d 739

Roy G. ROBINSON, Appellant,

v.

POLICE PENSION BOARD for the CITY OF TUCSON, Appellee.

No. 6592.

Supreme Court of Arizona.

May 20, 1959.

William F. Kimball, Tucson, for appellant.

F. Dale Healy, Jr., Tucson, for appellee.

UDALL, Justice.

This appeal is by plaintiff who sued in the trial court for a declaratory judgment that, as to him and others similarly situated, the Legislative amendment in 1952 of the "Police Pension Act of 1937" was void and unconstitutional, and praying for the fixing of his pension under the terms of the first

of the two legislative enactments. The trial court by its judgment upheld the applicability and constitutionality of the amendment. The instant appeal presents another facet to the problem determined in the recent case of Police Pension Board for City of Tucson v. Denney, 84 Ariz. 394, 330 P.2d 1. Incidentally, the present case was decided below and this appeal taken and briefs written by the parties prior to our decison in the Denney case.

The undisputed facts are these: Roy G. Robinson, plaintiff-appellant, retired from the Tucson city police force on July 16, 1953, after having completed more than twenty years of service. He claimed pension benefits under the terms of the Police Pension Act of 1937 (Ch. 40, L. '37) which was enacted after he became a policeman. A 1952 amendment (infra) forms the basis for the allowance made to plaintiff by defendant-appellee Police Pension Board for City of Tucson. We shall hereafter refer to the parties as "plaintiff" and "the Board".

The Board conceded plaintiff was entitled to a pension but computed the amount due under the provisions of Ch. 93, S.L.1952, the pertinent part of which reads:

"Computation of pension upon voluntary retirement *or upon mandatory retirement; limitation*

"A. A member of the police department whose membership began prior to July 1, 1952 and who serves the department twenty years in the aggregate may, upon application, be retired, and shall be paid during his lifetime a monthly pension equal to fifty per cent of the average monthly compensation received by him during the period of five years immediately prior to the date of application for retirement. * * *" (Now appearing as A.R.S. § 9–925, subd. A),

whereas plaintiff contends it should have been computed upon the basis of the 1937 law (as amended in 1939), which appears as Section 16–1808(b), A.C.A.1939. The latter statute provides for fifty percent of the average monthly compensation received by him during the period of *one* year immediately prior to the date of application for retirement. Were this statute followed, plaintiff's pension would be increased monthly by $22.54.

Plaintiff in his own behalf, and for others similarly situated, brought this action to have the statutes in question construed. Issues were framed and, there being no factual question to determine, the court granted the Board's motion for summary judgment. It found that as a matter of law the 1952 amendment, supra, was neither void nor unconstitutional as to plaintiff or others similarly situated, and that hence the action of the Board was correct. After entry of judgment this appeal followed.

The single question presented by this appeal is whether it was constitutionally competent for the Legislature to change the basis of computing the amount of pension in a manner unfavorable to the plaintiff, especially at a time so near to the end of the period at which the plaintiff would become entitled to a pension and his right to it be earned and perfect. In different words the question is one as to whether in 1952, when the amendment took effect, the rights of plaintiff under the 1937 law providing for the pension were so perfect and vested that he could not be constitutionally deprived of them.

█ The underlying problem is the correct determination of the extent and nature of the plaintiff's rights under the 1937 Act providing for the pension, and their status at the time of the amendment. If those rights rested upon contract and were vested it must be clear that plaintiff could not be deprived of them by the unilateral action of the Legislature. This is a firmly established principle in our Constitutional system.

In finding an answer to this question the following quotation from McQuillin, 3rd Ed., Vol. 3, Section 12.144, is helpful:

"According to the majority view, the law as to pensions existing at the time one enters into public service does not form a part of the contract of employment in the sense that the rights to the benefits which would accrue under the then existing law are vested property rights of which such person cannot be deprived by any subsequent act of the Legislature. * * *"

This rule so clearly represents the holding of the majority, countrywide, that it may fairly be said that support for a contrary view may be cited from only three states,—California, of which Kern v. City of Long Beach, 29 Cal.2d 848, 179 P.2d 799, is typical; Washington, as represented by Bakenhus v. City of Seattle, 48 Wash.2d 695, 296 P.2d 536; and Georgia, as represented by Bender v. Anglin, 207 Ga. 108, 60 S.E.2d 756. A very complete annotation is appended to a pension case reported at 52 A.L.R.2d 437.

The California cases, quite numerous, were considered by the Nebraska court in Lickert v. City of Omaha, 144 Neb. 75, 12 N.W.2d 644, but the reasoning in them was rejected; and when the various and contradictory statements in the California cases are considered it must be conceded that their standing as authority is greatly weakened. The lack of certitude in the holdings of the California court is illustrated by the Kern case, supra [29 Cal.2d 848, 179 P.2d 803], in which the "vested right" theory was given effect, but the court also declared in the same case:

"Thus it appears, when the cases are considered together, that an em-

388

ployee may acquire a vested contractual right to a pension but that this right is not rigidly fixed by the specific terms of the legislation in effect during any particular period in which he serves. The statutory language is subject to the implied qualification that the governing body may make modifications and changes in the system. The employee does not have a right to any fixed or definite benefits, but only to a substantial or reasonable pension. There is no inconsistency therefore in holding that he has a vested right to a pension but that the amount, terms and conditions of the benefits may be altered."

Under the facts of that case it may not be said that the result reached was other than just, the term of service lacking only 32 days before the officer would be entitled to be pensioned and retire, when the Charter was so amended as entirely to eliminate the pension. The court naturally and properly was astute to defeat the double dealings "That keep the word of promise to our ear, and break it to our hope," but a very circuitous route was taken to support the result reached by the court.

When the terms "vested right" and "contingent interest" and "expectancy" are considered and their meaning ascertained it seems wholly incongruous to think of the right to a pension as being "vested" when in truth and in fact it is a right which can only have an existence if the uncertainties of the future bring it into being. The distinction appears in uncounted number of decisions, a reasonably fair example of them being Wirtz v. Nestos, 51 N.D. 603, 200 N.W. 524, 530:

" '* * * the right is expectant, not vested, when it depends on the continued existence of the present condition of things until the happening of some future event; the right is contingent, not vested, when it comes into existence only on an event or condition which may not happen. * *' "

We submit that the 1952 amendment, on the precise point in question, is either unconstitutional on its face as to the plaintiff and others similarly situated, or it is not. There is no middle ground, hence the Act, as to them, should either be upheld or stricken down as unreasonable and arbitrary. It should be noted the Police Pension Act is applicable to all those cities of the State having a population of not less than twenty thousand inhabitants, and to those smaller incorporated cities or towns who by ordinance have created such a fund. A.R.S. § 9-912. Hence, the actuarial soundness of the fund in any given city, or whether the change is shown to be reasonably required there to preserve the integrity of the pension system, is not a matter for

judicial inquiry, for the Legislature has plenary power to make *reasonable* modification and changes in the law which is, of course, operative on a statewide basis. In Sweesy v. Los Angeles County Peace Officers' R. Board, 17 Cal.2d 356, 110 P.2d 37, 40, the court stated:

"* * * Therefore, the question of what benefits would be warranted by either the individual or mass contributions to the fund is for the legislative body, and not for the pension board or the courts, whose respective functions in such cases are to administer and interpret the provisions of the law as written. * * *"

It appears that the same contentions are raised, and the same authorities cited in the instant case as were urged and considered in the Denney case, supra. There we upheld the right of the Legislature to suspend pension payments during the period such a recipient was receiving a salary as an officer or employee of a political subdivision of the State; here we have a less drastic proviso of broadening the base on which pensions are to be computed. Both have to do with maintaining the integrity of the system and making the pension fund more sound. It is our view that in addition to the principles enunciated earlier in this opinion, the rationale of the Denney case is basically determinative of the instant appeal.

We do not believe it can be fairly said upon the facts before the court that any unreasonable disparagement of the plaintiff's inchoate pension rights arises out of the amendatory legislation complained of. We hold that the judgment of the learned trial court accords both with reason and with the better authority.

Judgment affirmed.

PHELPS, C. J., and KELLY, J., concur.

Justice JOHNSON disqualified by reason of having been the trial judge. By stipulation of the parties, retired Judge HENRY C. KELLY was called to sit in his stead in accordance with Article 6, Section 26, Constitution of Arizona.

BERNSTEIN, Justice (dissenting).

I readily agree that "the rationale of the Denney case is basically determinative of the instant appeal," but I am constrained to disagree with the conclusions of the court that the legislative enactment here reviewed is a "less drastic" change in the pension scheme than was sustained in the Denney case and that the change here is beyond challenge by one whose pension rights are adversely affected.

Our Constitution, Article 9, Section 7, A.R.S., like those of California and Washington, prohibits the state and local gov-

390

ernmental subdivisions from ever making "any donation or grant, by subsidy or otherwise, to any individual, association, or corporation * * *." Accordingly, to avoid the serious constitutional problem which would be posed, we were, and are, required to reject the view expressed by some courts, see, e. g., Kinney v. Contributory Retirement Appeal Board, 330 Mass. 302, 113 N.E.2d 59; Roach v. State Board of Retirement, 331 Mass. 41, 116 N.E.2d 850; McCarthy v. State Board of Retirement, 331 Mass. 46, 116 N.E.2d 850, 852, that government employees' pension programs involve gratuitous donations from the state, to which prospective pensioners can have no right whatever prior to receipt of the donation, or at least prior to the time a pension donation becomes due and payable. "For this reason," as said by the Supreme Court of Washington, "the cases from those jurisdictions which follow the so-called majority rule cannot be persuasive here, for, as was pointed out in Kern v. City of Long Beach, 1947, 29 Cal.2d 848, 179 P.2d 799, they were apparently decided under different constitutional provisions." Bakenhus v. City of Seattle, 48 Wash.2d 695, 698, 296 P.2d 536, 538; see also Bender v. Anglin, 207 Ga. 108, 112, 60 S.E.2d 756, 760. Moreover, to recognize that pensions represent deferred compensation earned during the course of employment and held out as part of the inducement and promise of employment is only to acknowledge what is an apparent fact of this age. See, e. g., Bender v. Anglin, supra; Weinberg, Significant Trends in Pension Planning for Public Employees, 11 Public Personnel Rev. 78 (1950); Kneir, City Government in the United States 487–489.[1] Thus, the Denney case necessarily and wisely said, 84 Ariz. 394, 398–399, 330 P.2d 1, 3–4, that

"* * * certain rights [were] given to the officer that must be respected. Subject though to reasonable

1. The majority opinion mentions in passing that appellant was first employed prior to the enactment of the 1937 pension law upon which he now relies. If the majority means to imply that that fact should make a difference in result, as was held in the Denney case, 84 Ariz. 394, 398, 330 P.2d 1, 3, I wish to specifically note my dissent to that proposition. Appellant may not have entered the service of the City with a pension in mind, but he did continue in such employment for some sixteen years after a pension was provided for, during a period when pension provisions increasingly became a prominent feature of private employment contracts. Appellant's forbearance in not leaving his employment (which also can be analyzed as a series of affirmative acceptances of employment for each contract term) must be considered analytically as the legal equivalent of first entering employment when the promise was outstanding. Cf. A.L.I., Restatement of Contracts Section 90; Hunter v. Sparling, 87 Cal.App.2d 711, 197 P.2d 807; West v. Hunt Foods, Inc., 101 Cal.App.2d 597, 225 P.2d 978.

modification and changes in the law by the legislature.

\* \* \* \* \* \*

" \* \* \* The courts are fairly well in agreement that, prior to retirement, permitting reasonable legislative modification of pensions is necessary since pension systems must be kept flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system and carry out its beneficent policy. The permissible scope of change is for the courts to determine on the record presented. Necessarily such modifications must be reasonable."

In result, although the conclusion reached in the Denney case was at variance with Hickey v. Pittsburgh Pension Board, 378 Pa. 300, 106 A.2d 233, 52 A.L.R.2d 430—perhaps because the legislative change there reviewed, forbidding compensation from two governmental agencies, involved a subject so much within the realm of unreviewable political choice— the decisional approach was that suggested by the Pennsylvania, California and Washington cases. See, e. g., the recent cases of Harvey v. Retirement Board of Allegheny County, 392 Pa. 421, 141 A.2d 197; Wright v. Retirement Board of Allegheny County, 390 Pa. 75, 134 A.2d 231; Rupert v. Policemen's Relief and Pension Fund, 387 Pa. 627, 129 A.2d 487; Abbott v. City of Los Angeles, 50 Cal.2d 438, 326 P.2d 484; Allen v. City of Long Beach, 45 Cal. 2d 128, 287 P.2d 765; Bakenhus v. City of Seattle, supra. If the Court now disparages the authority of those cases (all except the Washington case, incidentally, decided after any case cited by the majority), it also must be critical of the Denney case. If it relies on the quoted portion of 3 McQuillin's Municipal Corporations Section 12.144, it must ignore the immediate addition to the text entered by the 1958 Cumulative Supplement, p. 138, that "Any revision of pension plan structure, however, which adversely affects the rights of the participants, must bear some material relation to the theory of the particular pension system and its successful operation or it will have prospective application only to the rights of new members. It has also been held that the disadvantages resulting to members from a revision should be offset by comparable new advantages." If it finds it "wholly incongruous to think of the right to a pension as being 'vested' ", it must take a step reverse to the developmental trend of the cases influenced by "the now generally accepted theory that pensions are a part of the compensation of an employee to which, under ordinary circumstances, he is as much entitled as he is to wages paid him for the work he has actually performed," Annotation, 52 A.L.R.2d 437, 441, and reject the considered opinion expressed in 3

Antieau, Municipal Corporation Law Section 22.11, p. 257, to the effect that a vested rights rule such as that adopted by the California Supreme Court represents "the better view". If it seeks "certitude" beyond what the cited cases provide,[2] it must abandon the attempt of the Denney case as well as the effort of other courts to reconcile the competing equities of the state in favor of flexibility and the employee in favor of stability, consistent with traditional concepts of contract law. See Note, Contractual Aspects of Pension Plan Modification, 56 Col.L.Rev. 251.

Read in light of the foregoing, the Denney case [84 Ariz. 394, 330 P.2d 4], utilizing its own words, recognizes that a governmental employee possesses "certain rights" in the nature of contractual rights fixed by the promise of the employer at the time of employment, subject to unilateral change by the employer only when such change is shown to be reasonably required to adjust the pension plan to "changing conditions and at the same time maintain the integrity of the system and carry out its beneficent policy." The question in each case, then, to be answered "on

2. See, e. g., Harvey v. Allegheny County Retirement Board, 392 Pa. 421, 431–432, 141 A.2d 197, 203:
"We may thus summarize the law relating to the rights of a public employe in a retirement system as follows:
"1. An employe who has complied with all conditions necessary to receive a retirement allowance cannot be affected adversely by subsequent legislation which changes the terms of the retirement contract.
"2. An employe who has not attained eligibility to receive a retirement allowance may be subject to legislation which changes the terms of the retirement contract if the change is a reasonable enhancement of the actuarial soundness of the retirement fund.
"3. An employe who has not attained eligibility to receive a retirement allowance may not be subject to legislation which changes the terms of the retirement contract if the change does not reasonably enhance the actuarial soundness of the retirement fund."
As for the California cases, suffice it to say that whatever disparity of view existed at the the time the early decisions were reviewed in Lickert v. City of Omaha, 144 Neb. 75, 12 N.W.2d 644, the recent Kern, Allen and Abbott cases constitute an unbroken line of California Supreme Court authority, drawn from . experience and painstaking reflection, that, as said in the Allen case [Allen v. City of Long Beach], 45 Cal.2d 128, 131, 287 P.2d 765, 767:
"An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. [Citing cases.] Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages. * * * "
See also Cochran v. City of Long Beach 139 Cal.App.2d 282, 293 P.2d 839; Glaeser v. City of Berkeley, 148 Cal.App. 2d 614, 307 P.2d 61; Chapin v. City Commission, 149 Cal.App.2d 40, 307 P. 2d 657.

the record presented," is whether the change is shown to be reasonably required to preserve the integrity of the pension system, i. e., to enhance its actuarial soundness, or, as the court apparently determined in the Denney case, is a reasonable change promoting a paramount interest of the state without serious detriment to the employee.

The mere statement of that question answers itself in this case. First, considering the likelihood that the average monthly compensation of most employees will be greater if measured by the year preceding retirement than if measured by the five-year period preceding retirement, it is self-evident that the legislative change here reviewed would reduce the pension of many employees relying on the earlier law, as it would reduce the plaintiff's pension. No more drastic or sweeping change affecting the prospective pensioner, short of total elimination of the pension fund, is conceivable. If the legislature can without any showing of justification reduce the amount payable to a prospective pensioner like the plaintiff by some $22, no reason appears why it cannot reduce the amount payable to one dollar. In brief, if the instant legislative change is summarily approved, the rights of the employee become as nothing. Second, proceeding by motion for summary judgment, the defendant, of course, has not shown that the challenged change was reasonably required to preserve the integrity of the fund or that plaintiff could not make a contrary showing. If any assumption is appropriate in the absence of evidence in that regard, I would think it to be that, even if the fund is in jeopardy, means are available to augment it without reducing the payments which were an implicit promise of the plaintiff's employment. Cf. A.R.S. §§ 9–923 and 9–921 and A.C.A.1939, §§ 16–1812 and 16–1810, providing for additional or variable contributions to the fund by the municipality as the means of insuring the actuarial soundness of the fund. In any event, if the notion—to which the present majority even yet pays lip service—that only reasonable modifications are permitted is to have any meaningful life, it can only be implemented by providing an opportunity to challenge the reasonableness, i. e., the rational basis, for a legislative modification by the presentation of relevant facts. Compare Chastleson Corp. v. Sinclair, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841; City of Hammond v. Schappi Bus Line, Inc., 275 U.S. 164, 48 S.Ct. 66, 72 L.Ed. 218; Borden's Farm Products Co., Inc. v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 79 L.Ed. 281; Thompson v. Consolidated Gas Co., 300 U.S. 55, 69–70, 57 S.Ct. 364, 81 L.Ed. 510; United States v. Carolene Products Co., 304 U.S. 144, 153–154, 58 S.Ct. 778, 82 L.Ed. 1234; Polk Company v. Glover, 305 U.S. 5, 10, 59 S.Ct. 15, 83 L.Ed. 6; State Board of Barber Examiners

v. Edwards, 76 Ariz. 27, 31, 258 P.2d 418, 420–421. As Mr. Chief Justice Hughes said in the Borden's case, 293 U.S. at page 210, 55 S.Ct. at page 192 " * * * where the legislative action is suitably challenged, and a rational basis for it predicated upon * * * particular economic facts * * * which are outside the sphere of judicial notice, these facts are properly the subject of evidence and of findings." If such inquiry is feared because of its difficulties, it is meet to answer that the difficulties are of the sort with which courts, in assessing reasonableness, have long been familiar. Thus, in so far as a legislative enactment is shown to be reasonably required in one situation—for example, to protect the fund of one city—but not in another and the two situations cannot with facility be treated separately, that fact may be taken into account in aid of the legislation. See United States v. Carolene Products Co., supra. To withdraw from the inquiry and decide the case, as does the majority opinion, as though there were "no factual question to determine" is to assume by judicial notice economic facts which are not known and which, a priori, are unknowable: (1) that the fund of the city of Tucson was inadequate or in danger of serious depletion when the 1952 modification was enacted; or (2) that the fund of some Arizona city was in that posture and ameliorative legislation could not easily be enacted without affecting the policemen of Tucson; and (3) that other means of correcting the situation, such as that suggested by the above cited statutory provisions or such as enacting legislation to have effect only with respect to later employed policemen, was sufficiently impracticable so as to render the means chosen a not unreasonable remedial solution.

I would reverse the decision below and remand the case for trial so that, in conformity with the spirit of the Denney case and what I consider the better view, the court can have the benefit of findings based on relevant facts, not legislative fiat.

STRUCKMEYER, J., concurs in the dissent.